IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, et al., | Civil Action No.: 81-3876 |
| Plaintiffs, | JUDGE DICKINSON R. DEBEVOISE |
| v. | |
| REPUBLICAN NATIONAL COMMITTEE, et al. | |
| Defendants. | |

**COMPLAINT IN INTERVENTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE AND DECLARATORY RELIEF**

Intervenors, by and through their undersigned counsel, allege upon knowledge as to themselves and upon information and belief as to all other matters as follows:

### DISCLOSURE OF LOCATION OF PARTIES UNDER L.R. 10.1(A)

1. Ebony Malone is located at 7908 Euclid Avenue, Apartment 503, Cleveland, Ohio 44103.

2. Irving Agosto is located at 2234 West 20th Street, Cleveland, Ohio 44113.

3. Plaintiff Democratic National Committee ("DNC") has its principal place of business located at 430 South Capitol Street, S.E., Washington D.C. 20003.

4. Defendant Republican National Committee ("RNC") has its principal place of business located at 310 First Street, S.E., Washington, D.C. 20003.

## NATURE OF THE CASE

5. Intervenors include a newly registered African-American voter and Latino voter who seek to intervene, reopen, and enforce Consent Decrees entered into between the DNC and RNC. Enforcing the Consent Decrees will ensure Intervenors are able to vote in the upcoming November 2, 2004, general election.

6. This Court has entered two Consent Decrees and an Order against the RNC that restrain the "ballot security" or "ballot integrity" activities of the RNC. The Consent Decrees arose out of complaints filed by the DNC alleging, *inter alia*, that the RNC had participated in mass mailings to registered voters, and used letters returned as undelivered to compile voter challenge lists.

7. The RNC's "ballot security" activities were purportedly done to combat "vote fraud," but in fact had the effect of suppressing legitimate African-American votes. Consequently, Consent Decrees were entered. The second Consent Decree requires that the RNC apply for, and obtain, approval from this Court *before it engages in, or* "assists or participates in," any ballot security or anti voter fraud efforts.

8. On information and belief, it has come to light in the last few days that the RNC has participated in yet another "ballot security" program, relying on mass mailings to registered voters and using letters returned undelivered to compile voter challenge lists. A list of 35,000 registered voters was developed in Ohio (the "List"). Like the other lists leading to the Consent Decrees, this List does not show that the voters on it are unqualified to vote.

         And like the other lists leading to the Consent Decrees, it affects African-American voters disproportionately.

9. The List is reportedly overwhelming the ability of Ohio election officials to adjudicate the challenges. And it threatens to clog the election process in Ohio on Election Day.

10. Intervenors, including a newly registered African-American voter and a Latino voter whose names are on the List seek to intervene because they are concerned that the Defendant RNC's "ballot integrity" program will deprive them and many minority voters of the right to vote. The second Consent Decree requires advance approval of this Court before challenge lists may be compiled and used to challenge voters. It does so precisely to prevent such a list from being used to disrupt the election process at the Eleventh Hour. By continuing with its challenges to these voters, the RNC will disrupt the election process in Ohio where election resources already are stretched to the breaking point. The resulting chaos, confusion and delays will cause African–American voters disproportionately to be deprived of their right to vote.

## JURISDICTION AND VENUE

11. "[A] federal district court has authority to enforce its consent decree . . . ." *National R.R. Passenger Corp. v. Pennsylvania Public Utility Comm'n*, 342 F.3d 242, 259 (3d Cir. 2003). This court has retained jurisdiction to enforce the Consent Decrees. (*See* July 27, 1987, Settlement Stipulation and Order of Dismissal, p. 3.)

12. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES AND STANDING

13. Ebony Malone is a registered voter in Ohio who is on the List. Ms. Malone fears that challenges made to voters at her precinct, including herself, may slow down the electoral process and discourage other voters from casting a ballot during the general election. Ms. Malone is African-American. She is therefore an intended beneficiary of the Consent Decrees. (*See* Exhibit A, Malone Declaration.)

14. Irving Agosto is a registered voter in Ohio who is on the List. Mr. Agosto fears that challenges made to voters at his precinct, including himself, will slow down the electoral process to the point where he will be prevented on November 2, 2004, from being able to cast a vote. Mr. Agosto is Latino. He is therefore an intended beneficiary of the Consent Decrees. (*See* Exhibit B, Agosto Declaration.)

15. The Consent Decrees that Intervenors seek to enforce were issued in a civil rights case brought under 42 U.S.C. §§ 1971, 1973, 1983, and 1985. Intervenors are its intended beneficiaries, and accordingly have standing to enforce its terms. Fed. R. Civ. P. 71; *see also Coca-Cola Bottling Co. v. Coca-Cola Co.*, 645 F. Supp. 1419, 1438 (D. Del. 1987) ("*Coke IV*") ("Consent decrees arising from suits asserting violations of the civil rights statutes have also been found amenable to subsequent third-party enforcement"); *Virgo v. Local Union 580*, 107 F.R.D. 84, 91 (S.D.N.Y. 1995) ("As to consent decrees entered in civil rights cases, the weight of authority indicates that . . . those whom the parties to a consent decree intended to be benefited thereby may enforce the decree in a separate action").

A. **History of Consent Decree Proceedings.**

16. In 1981, the RNC, under the guise of a "Ballot Security Task Force" ("Task Force"), allegedly obtained lists of registered voters in predominately African-American precincts in New Jersey and mailed letters to those registered voters. When 45,000 of those letters came back undeliverable, the RNC compiled a challenge list and attempted to have all of those individuals removed from the voter rolls without knowing whether they still lived somewhere in the same voting precinct.

17. A final Consent Decree ("Final Consent Decree") was entered on July 27, 1987, to ensure that future RNC activities did not "us[e], nor appear[] to use, racial or ethnic criteria in connection with ballot integrity, ballot security or other efforts to prevent or remedy suspected vote fraud . . ." (*See* July 27, 1987, Final Consent Decree at pp. 1-2.) Pursuant to initial Consent Decree, the RNC must

> (e) refrain from undertaking any ballot security activities in polling places or election districts where the racial or ethnic composition of such districts is a factor in the decision to conduct, or the actual conduct of, such activities there and where a purpose or significant effect of such activities is to deter qualified voters from voting; and the conduct of such activities disproportionately in [sic] or directed toward districts that have a substantial proportion of racial or ethnic populations shall be considered relevant evidence of the existence of such a factor and purpose . . . .

> (11/1/1982 Consent Decree.)

18. Although the foregoing stipulation terminated by its terms on March 1, 1987, it was replaced by the Final Consent Decree, which required the RNC to obtain *prior court approval* for all "ballot security" efforts (defined to include any "efforts to prevent or remedy vote fraud") other than normal poll watcher efforts. (Final Consent Decree at p. 2.) Even poll watchers

5

cannot use the fruits of pre-election ballot security efforts, such as voter challenge lists, without prior court approval. (*Id.*)

19. In 1990, the Court found that the RNC had violated the Consent Decree "by failing to include in ballot security instructional and informational materials guidance to state parties on unlawful practices under the consent decree or copies of such decree for their review." (*See* November 15, 1990, Order at ¶2.)

**B.    The RNC's Current Ballot Security Activities.**

20. On information and belief, October 22, the Republican Party filed a "challenge" list of 35,000 names in Ohio ("List"). The Intervenors are on this List. (*See* Exhibit A, Malone Declaration; Exhibit B, Agosto Declaration.)

21. On information and belief, the List was discussed by RNC Chairman Ed Gillespie at a press conference in Ohio as a way of combating "voter fraud." *See* Jo Becker, *Ohio GOP Challenges 35,000 Voters*, Washington Post, Oct. 23, 2004.

22. On information and belief, the List was compiled just as the previous illegal lists were compiled; mass mailings were sent to registered voters and voters whose mail was returned undelivered were put on that list.

23. On information and belief, the List has been used to challenge registered voters throughout Ohio. Some of the challenges have been withdrawn or rejected on their face because the lists were riddled with errors. However, thousands of challenges remain unresolved. Approximately 8,000 registered voters in Cuyahoga County are under challenge.

24. On information and belief, the 35,000 challenges on the List have jeopardized the election process. Ohio election officials currently have no

set procedure for providing notice to the challenged voters and resolving the challenges. Many officials are considering extreme measures in order to accomplish their duties by election day so that the challenged individuals who are eligible to vote will be able to vote with no complications, delays or errors.

25. On information and belief, the challenges affect African-American voters disproportionately. A person living in a precinct that is over 90% African American is four times as likely to be challenged than a person living in a precinct over 90% white. (*See* Exhibit C, Declaration of Phillip Klinkner.)

26. On information and belief, use of this List did not receive prior approval of this Court.

## COUNT ONE
## Violation of Consent Decree

27. Intervenors reallege and incorporate herein the allegations set forth in Paragraphs 1 through 26 above.

28. The Final Consent Decree requires that the RNC obtain prior court approval for all "ballot security" efforts, which include any "efforts to prevent or remedy vote fraud." The RNC recognized this requirement when it entered into the Final Consent Decree, but did not seek this Court's approval for its current "ballot security" efforts. This Court should preliminarily enjoin any challenges by the RNC or any organization acting in concert with it based on any ballot security efforts until approved by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Intervenors request that this Court enter judgment in their favor as follows:

    (a)    That this Court assume jurisdiction;

7

(b) Declare that the ballot security efforts described in this Complaint were recognized to have been submitted to this Court for approval, but were not;

(c) That this Court preliminarily enjoin any challenges by the RNC or any organization acting in concert with it based on any ballot security efforts until approved by this Court;

(d) Award Intervenors reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1973*l*(e) and § 1988; and

(e) Grant Intervenors such other relief as may be just.

Respectfully submitted,

/s/ John W. Nields / ANR

John W. Nields
Patricia G. Bulter
Laura S. Shores
Ari N. Rothman
**HOWREY SIMON ARNOLD & WHITE LLP**
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

/s/ Craig H. Livingston

Craig H. Livingston (CHL0835)
**BALL LIVINGSTON, L.L.P.**
661 Franklin Avenue
Nutley, New Jersey 07110
(973) 661-4545

8

                    Judith A. Browne
                    Edward Hailes
                    Advancement Project
                    1730 M St., NW Suite 910
                    Washington, D.C. 20036
                    (202) 728-9557

Dated: October 27, 2004        Counsel for Interveners

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> Defendants. | Civil Action No. 81-3876 <br><br> JUDGE DICKINSON R. DEBEVOISE |

## MOTION TO APPEAR PRO HAC VICE

In accordance with Local Civil Rule 101.1, Admission of Attorneys, the undersigned respectfully moves for the admission of Patricia G. Butler of the law firm Howrey Simon Arnold & White, LLP, 1299 Pennsylvania Avenue, NW, Washington, D.C. 20004-2402, 202-783-0800, for purposes of appearing as counsel on behalf of Intervenors Ebony Malone and Irving Agosto in the above-styled case.

Patricia G. Butler certifies herewith that she has studied the Local Rules of this Court and is a member in good standing of the District of Columbia Bar and the United States District Court for the District of Columbia.

In further support of this motion, it is hereby designated that Craig H. Livingston is a member of the bar of this Court and maintains an office in this District for the practice of law. He is a person to whom the Court and counsel may

readily communicate and upon whom papers may be served. Mr. Livingston is a member of the law firm of Ball Livingston, L.L.P., 661 Franklin Avenue, Nutley, New Jersey 07110, telephone number 973-661-4545, fax number 973-661-4646.

## **CONSENT TO DESIGNATION**

I hereby consent to the foregoing designation.

October 28, 2004

_____
Craig H. Livingston

Respectfully submitted,

*/s/ Patricia G. Butler*

John W. Nields, Jr.
Patricia G. Butler
Laura S. Shores
Ari N. Rothman
**HOWREY SIMON ARNOLD & WHITE, LLP**
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

*/s/ Craig H. Livingston*

Craig H. Livingston
Ball Livingston, L.L.P.
661 Franklin Avenue
Nutley, New Jersey 07110
(973) 661-4545

Dated: October 28, 2004                                    Counsel for Intervenors

# CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of October, 2004, true copies of the foregoing Motion to Appear Pro Hac Vice were served by facsimile and United States Mail, postage prepaid, upon each of the parties listed below:

Democratic National Committee
430 South Capitol Street, S.E.
Washington, DC 20003

Republican National Committee
310 First Street, S.E.
Washington, DC 20003

_____
Attorney for Intervenors