UNITED STATES COURT FOR THE THIRD CIRCUIT

No. 04-4186

Democratic National Committee, et al.

v.

Republican National Committee, et al.

Ebony Malone, Intervenor

Republican National Committee, Appellant

———————

On Appeal from the United States District Court for the District of New Jersey
(D NJ Civil No. 81-cv-3876)
District Judge: Honorable Dickinson R. Debevoise

———————

Submitted on Motion for Stay Pending Appeal

———————

BEFORE: SLOVITER, NYGAARD, AND FISHER, Circuit Judges

(Filed November 1, 2004)

Received and Filed

11-1-04

Marcia M. Waldron,
Clerk

Sloviter, J.,

This matter is before us on the emergency motion of Republican National Committee(RNC) for Stay pending Appeal and for expedited Consideration. It appeals from the Order of the District Court, Judge Dickinson R. Debevoise of the District of New Jersey, entered late this afternoon following a hearing today, which enjoined the RNC and its "agents, officers, and employees," "from using for challenging purposes on November 2, 2004 a list originally of 35,000 names prepared for that purpose by the Republican Party in the State of Ohio," and further providing that the RNC "shall instruct its challengers in the State of Ohio not to use such list or any part thereof for challenging purposes at the November 2, 2004, election."

The RNC claims that the Intervenor Ebony Malone, who initiated this matter before the District Court, is subject to challenge because of irregularities in her registration "which will cause Board of Election officials to challenge her registration, regardless whether the RNC or the Ohio Republican Party (ORP) makes such a challenge." The Motion states that Malone's claim is non-justiciable because the relief provides her no effective redress in that the County Board of Elections can officially challenge Malone's vote by operation of Ohio law because official correspondence to her was returned "undeliverable." The RNC further argues that it has not violated the Consent Decrees which are the basis for this

action.

In 1981 the Democratic National Committee filed suit against the RNC and the New Jersey Republican State Committee alleging that they violated the Fourteenth and Fifteenth Amendments, inter alia, which was resolved by a consent decree entered into in 1982 which provided that the RNC will refrain from undertaking any ballot security activities in polling places or elections districts where the racial or ethnic composition of such districts is a factor in the decision to conduct, or the actual conduct of, such activities there and where a purpose or significant effect of such activities is to deter qualified voters from voting; and the conduct of such activities disproportionately i[s] directed toward districts that have a substantial proportion of racial or ethnic populations shall be considered relevant evidence of the existence of such a factor and purpose.

The scenario set forth above was repeated in 1986 when the DNC brought a new action alleging RNC's breach of the 1982 Consent Decree and once again this action was settled by a new Consent Decree entered in 1987.  The RNC states that the 1982 Consent Order remains in full force and effect, but the 1987 Consent Decree allows the RNC to deploy persons on election day to perform normal poll watch functions so long as such persons do not use or implement the results of any other ballot security effort.  In the motion before us, the RNC emphasizes that the 1987 Consent Order restricts the RNC, but not any state party, from participating

in any ballot security program unless it had been determined by the court to
comply with the provisions of the Consent Order and applicable law.

Malone and other proposed intervenors brought suit against the RNC
alleging they are newly registered minority voters in Ohio who learned that their
names are on a 35,000 person list of challenged voters, which she claims appears
to have been compiled and used in violation of the Consent Decrees referred to
above. They claimed that the fact that their names are on the challenge list places
in jeopardy their right to vote on election day. The District Court scheduled an
evidentiary hearing for this morning, November 1, 2004. Although the
Democratic National Committee does not appear on Malone's original motion, it
appeared at this morning's hearing and in support of Malone.

Following the hearing, the District Court entered an order
rejecting the RNC's claim that Malone's claims are not justiciable, stating:

> The RNC contends that nothing is going to alter the fact that
> intervenor will be challenged come Election Day. Because she is
> flagged, the board workers will challenge her, and she will have to
> proceed to the same procedure that would follow the challenge of a
> challenger, that is the taking a seat and completing the 10U form. Her
> right to vote is no way impaired. This is a question of whether the
> simple existence of a flag requires a voter to go through the 10U
> procedure, or whether she answers the board member that she resides
> at the present district, she resides at the precinct, she'll be allowed to
> vote that morning.
>
> The more serious injury the intervenor would suffer [is] from
> the multiple challenges, the disruption of the voting process, from

which she, [like] the rest of the voters, would suffer.

There is a causal relationship between this disruption, and the challenged conduct, and the Court has a means to prevent it. This potential disruption was the basis of today's decision in <u>Spencer v. Blackwell</u>[1],[and the intervenor] therefore has standing.

The District Court then proceeded to summarize its findings, stating:

I conclude that the RNC has violated the consent decree. It engaged in a valid security effort as described above, even though the Ohio Democratic Committee was out front in the implementation of the challenging program, as described above from at least the time of the RNC, August 10th, 2004 letter until recent days the RNC participated with the Ohio Republican Committee in the devising and implementation of the program.

Procedurally, the RNC is in clear violation inasmuch as it failed to obtain the vast determination that the ballot security program complies with the provisions of the consent decree. Further, the program violates the substantive provisions of the decree. It undertook valid security activities in polling places or election districts where the racial composition in such districts in the decision to conduct, or the actual conduct of such activities there, and where a purpose or significant effect of such activities is to deter qualified voters vote. The RNC's original mailing in the Ohio State Committee's September 9th mailing were directed to the counties having the State's major cities and largest concentration of minority voters. There is a large portion of transient voters moving, like intervenor, from apartment to apartment.

The RNC's organization of names on the first list by zip code had knowledge of the significance of the areas in which the voters lived. In fact, the evidence shows that many more mailings to newly registered voters were returned to precincts. They were predominantly minorities from predominantly white precincts.

This makes it fare more likely that the disruptive effects of the

mass challenging the Republican party imposed to undertake would take effect in precincts where minority voters predominate, interfering with and discouraging voters from voting in those districts.

Having reached this conclusion that the RNC has violated the consent decree procedurally and subsequently, it is propose [d] to grant the relief the intervenor seeks, and enjoining the RNC from using the list, which it assembled in Ohio from challenging voters and to order the RNC to direct challenges not to use that list or any portion of it to challenge voters in the poles during the November election.

Intervenor is faced with irreparable harm and that her constitutional right to vote is threatened. Intervenor shows success on the merits. The relief entered does not prevent the RNC or public authorities from pursuing voter fraud by other means. The return of mail does not implicate fraud. There could be many reasons for that to happen, the RNC's study of the returns from its August 10th mailing showed a relatively small number of returns which it found suspicious and only ten that were going to be highly suspicious.

The public interest is always served by encouraging people to vote, and to prevent violations of a party's constitutional right to vote.

The RNC concedes that we must review the decision of the District Court for abuse of discretion. After consideration of the record that was before the District Court we believe there is ample support for the factual findings of the District Court. For example, the emails between the RNC and Michael Magan for the Ohio Republican Party, Exhibit 1, show collaboration and cooperation between the RNC and the ORP. Were time not of the essence, we would set forth more evidence in the record, but this opinion is drafted with less than eight hours before the opening of the polls in Ohio. Moreover, we feel obliged to note that

this opinion falls far short of the quality of opinions for which this court is noted.

Nonetheless, we are satisfied that the District Court did not commit an error of law

or abuse its discretion.  Accordingly, the RNC's motion for a stay pending appeal

is denied.

Judge Fisher dissents.


TO THE CLERK:

        Please file the foregoing opinion.


                                _____

        Circuit Judge