# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DEMOCRATIC NATIONAL COMMITTEE,
NEW JERSEY DEMOCRATIC STATE
COMMITTEE, VIRGINIA L.
FEGGINS, and LYNETTE MONROE,

           Plaintiffs,

      v.

REPUBLICAN NATIONAL COMMITTEE,
NEW JERSEY REPUBLICAN STATE
COMMITTEE, ALEX HURTADO,
RONALD C. KAUFMAN and JOHN A.
KELLY,

           Defendants.

Civil Action No. 81-3876
Hon. Dickinson R. Debevoise

FILED

NOV 1 1982

_____

**CONSENT ORDER**

    This matter having been brought before the Court by
Plaintiffs Democratic National Committee ("DNC"), New Jersey
Democratic State Committee ("DSC"), Virginia L. Feggins and
Lynette Monroe, and by Defendants Republican National Committee
("RNC"), New Jersey Republican State Committee ("RSC"), John
A. Kelly, Ronald Kaufman and Alex Hurtado, for the entry of a
Consent Order disposing of all claims which have been raised and
which could have been raised by way of complaint, counterclaim or
crossclaim in the above-entitled matter, and the parties having
consented to the entry of this order, and the Court having found
good cause, it is on this 1st day of November, 1982,

    ORDERED that the annexed settlement agreement between
certain plaintiffs and certain defendants, without any finding by
this Court of, and without any admission of, liability or
wrongdoing by them or by any other person or entity be, and the
same hereby is adopted by this Court as its final order in the
above-entitled matter; and it is

    FURTHER ORDERED that, as a result of the amicable
resolution of this matter, Plaintiffs' Amended Complaint be, and
the same hereby is, dismissed with prejudice and without costs as
against all named Defendants.

                      _____
                      Dickinson R. Debevoise, U.S.D.J.

CONSENT AS TO FORM AND ENTRY:

SONOSKY, CHAMBERS, SACHEE & GUIDO

By _____
Kenneth Guido, Jr.

BAUMGART & GENOVA

By _____
Angelo J. Genova
Attorneys for Plaintiffs

SHANLEY & FISHER

By _____
Thomas F. Campion
Attorneys for Defendants
Alex Hurtado and Ronald C.
Kaufman

STERNS, HERBERT & WEINROTH

By _____
Richard R. Weinroth
Attorneys for Defendant
Republican National Committee

STRYKER, TAMS & DILL

By _____
William J. Heller
Attorneys for Defendant
New Jersey Republican State
Committee

_____
Philip D. Kaltenbacher
Chairman, Republican
State Committee

JOHN J. BARRY, ESQ.

By _____
Attorney for Defendant
John A. Kelly

- 2 -

## SETTLEMENT AGREEMENT

WHEREAS, the Democratic National Committee ("DNC"), New Jersey Democratic State Committee ("DSC"), Virginia L. Feggins and Lynette Monroe, Plaintiffs, have instituted an action in the United States District Court for the District of New Jersey, Civil Action No. 81-3876, against the Republican National Committee ("RNC"), New Jersey Republican State Committee ("RSC"), John A. Kelly, Ronald Kaufman and Alex Hurtado, Defendants; and

WHEREAS, the parties wish to resolve amicably all matters raised or which could have been raised in the pleadings in the above-entitled matter,

NOW THEREFORE, in consideration of the foregoing, in consideration of the mutual covenants and conditions herein contained, and for other good and valuable consideration, the parties hereto agree as follows:

1.   The undersigned plaintiffs agree to consent to the entry of an order dismissing their Amended Complaint against all Defendants, without costs, with all parties bearing their own attorneys' fees.

2.   The RNC and RSC (hereinafter collectively referred to as the "party committees") agree that they will in the future, in all states and territories of the United States:

(a)  comply with all applicable state and federal laws protecting the rights of duly qualified citizens to vote for the candidate(s) of their choice;

(b)  in the event that they produce or place any signs which are part of ballot security activities, cause said signs to disclose that they are authorized or sponsored by the party committees and any other committees participating with the party committees;

(c)  refrain from giving any directions to or permitting their agents or employees to remove or deface any lawfully printed and placed campaign materials or signs;

(d)  refrain from giving any directions to or permitting their employees to campaign within restricted polling areas or to interrogate prospective voters as to their qualifications to vote prior to their entry to a polling place;

(e)  refrain from undertaking any ballot security activities in polling places or election districts where the racial or ethnic composition of such districts is a factor in the decision to conduct, or the actual conduct of, such activities there and where a purpose or significant effect of such activities

is to deter qualified voters from voting; and
the conduct of such activities disproportion-
ately in or directed toward districts that have
a substantial proportion of racial or ethnic
populations shall be considered relevant
evidence of the existence of such a factor and
purpose;

(f) refrain from attiring or equipping
agents, employees or other persons or permitting
their agents or employees to be attired or
equipped in a manner which creates the
appearance that the individuals are performing
official or governmental functions, including,
but not limited to, refraining from wearing
public or private law enforcement or security
guard uniforms, using armbands, or carrying or
displaying guns or badges except as required by
law or regulation, in connection with any ballot
security activities; and

(g) refrain from having private personnel
deputized as law enforcement personnel in
connection with ballot security activities.

3.    The party committees agree that they shall, as a
first resort, use established statutory procedures for challen-
ging unqualified voters.

4.    This Settlement Agreement, and the terms of the
Consent Order to be entered pursuant thereto, shall bind the DNC,
DSC, RNC, and RSC, their agents, servants and employees, whether
acting directly or indirectly through other party committees.  It
is expressly understood and agreed that the RNC and the RSC have
no present right of control over other state party committees,
county committees, or other national, state and local political
organizations of the same party, and their agents, servants and
employees.

5.    The parties to this Settlement Agreement shall ask
that the New Jersey legislature institute an examination of the
provisions of the New Jersey Election Laws to determine whether
present laws are adequate to insure the integrity of the
electoral process and the physical security of poll workers and
their property in New Jersey.

6.    All parties agree that they shall bear their own
costs and attorneys' fees and further agree that they shall not
seek to recover same in any action or proceeding instituted after
the execution of this Settlement Agreement and the Consent Decree
to be entered pursuant thereto.  No party to this Agreement shall
undertake any further legal action arising out of events
surrounding the November 1981 general election in the State of
New Jersey or arising out of the filing of this lawsuit, except
as specified in paragraph 7 below.

7.    The undersigned Plaintiffs, as Releasors, for and in consideration of the mutual covenants and conditions hereof, and in further consideration of the sum of One Dollar ($1.00), lawful money of the United States of America to the Releasors in hand paid by all Defendants, the receipt of which is hereby acknowledged, have remised, released and forever discharged, and by these presents do remise, release and forever discharge the Defendants-Releasees of and from all obligations, causes of action, claims or demands, at law or in equity, which arose out of ballot security activities during the 1981 general election in New Jersey that Releasors asserted or could have asserted against the Releasees in Civil Action No. 81-3876 in the United States District Court for the District of New Jersey, provided that nothing in this agreement shall prevent plaintiffs from seeking relief, at law or equity, for a violation of the terms of this settlement agreement or the related consent order incorporating the terms hereof.  More particularly, but not by way of limitation, the undersigned plaintiffs expressly agree to abandon and to waive all claims to monetary relief asserted or which could have been asserted against the defendants.

8.    It is expressly understood and agreed that this Settlement Agreement, and the Consent Order incorporating the terms hereof, do not constitute any finding or admission of liability or wrongdoing by any defendant and do not constitute any finding or admission of merit or lack of merit to the allegations raised by the plaintiffs.  This agreement is not an admission that any of the activities which the party committees have agreed not to undertake were undertaken by any of the party committees or by any party to this lawsuit or by any other person or entity.  This agreement is not an admission of civil or criminal liability or responsibility on the part of any participant in it.

Dated Noveuber 1, 1982.

DEMOCRATIC NATIONAL COMMITTEE            REPUBLICAN NATIONAL COMMITTEE

By _____                   By _____

By _____

NEW JERSEY DEMOCRATIC STATE              NEW JERSEY REPUBLICAN STATE
COMMITTEE                                COMMITTEE

By _____                   By _____

                                         _____
                                         Philip D. Kaltenbacher
                                         Chairman, Republican
                                         State Committee

- 3 -

# Exhibit 2

7-29-87
BU



UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

----------------------------------------

DEMOCRATIC NATIONAL COMMITTEE,

               Plaintiff,

v.

REPUBLICAN NATIONAL COMMITTEE,

               Defendant.

----------------------------------------

Hon. Dickinson R. Debevoise
Civil Action No. 86-3972

SETTLEMENT STIPULATION AND
ORDER OF DISMISSAL

       Whereas, on November 1, 1982, this Court entered a Consent Order in Democratic National Committee, et al. v. Republican National Committee, et al., Civil Action No. 81-3876 ("Consent Order"). The Democratic National Committee ("DNC"), Republican National Committee ("RNC") and others were parties to the settlement agreement incorporated in and adopted as the Consent Order. The Consent Order remains in full force and effect;

       Whereas, during the course of the case, the parties have engaged in extensive discovery from each other and third parties. More than 50 depositions have been taken and thousands of documents have been examined;

       Whereas, the RNC and DNC recognize the importance of encouraging citizens to register and vote and the importance of not hindering or discouraging qualified voters from exercising their right to vote;

       Whereas, the RNC and DNC recognize the importance of preventing and remedying vote fraud where it exists;

       Whereas, the RNC and DNC recognize the importance of neither using, nor appearing to use, racial or ethnic criteria in

connection with ballot integrity, ballot security or other efforts to prevent or remedy suspected vote fraud;

It is therefore ordered upon the agreement and stipulation of the parties and all prior proceedings herein that as to the RNC and DNC the Consent Order is amended to specifically provide:

A. "Ballot security" efforts shall mean ballot integrity, ballot security or other efforts to prevent or remedy vote fraud.

B. To the extent permitted by law and the November 1, 1982 Consent Order, the RNC may deploy persons on election day to perform normal poll watch functions so long as such persons do not use or implement the results of any other ballot security effort, unless the other ballot security effort complies with the provisions of the Consent Order and applicable law and has been so determined by this Court.

C. Except as provided in paragraph B above, the RNC shall not engage in, and shall not assist or participate in, any ballot security program unless the program (including the method and timing of any challenges resulting from the program) has been determined by this Court to comply with the provisions of the Consent Order and applicable law. Applications by the RNC for determination of ballot security programs by the Court shall be made following 20 days notice to the DNC which notice shall include a description of the program to be undertaken, the purpose(s) to be served, and the reasons why the program complies with the Consent Order and applicable law.

Case 2:81-cv-03876-DRD-MAS   Document 38-4   Filed 11/03/08   Page 10 of 55

Until further order of the Court, the Court retains jurisdiction to make the determinations set forth above.

Except as provided herein, the RNC and DNC respectfully request that the above-captioned case be dismissed with prejudice upon the order of the Court with each to pay its own costs.

IT IS SO STIPULATED:

David Boies
Rodney L. Stenlake
G. Elaine Wood
CRAVATH, SWAINE & MOORE
One Chase Manhattan Plaza
New York, New York   10005
(212) 422-3000

William H. Schweitzer
Lee T. Ellis, Jr.
BAKER & HOSTETLER
Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C.   20036
(202) 861-1500

Douglas S. Eakeley
Robert J. Gilson
RIKER, DANZIG, SCHERER,
  HYLAND & PERRETTI
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey   07960
(201) 538-0800

Thomas F. Campion
James M. Altieri
SHANLEY & FISHER
131 Madison Avenue
Morristown, New Jersey   07960
(201) 285-1000

Attorneys for Plaintiff
Democratic National Committee

Attorneys for Defendant
Republican National Committee

AND IT IS SO ORDERED this ___27___ day of July, 1987.

s/ Debevoise
Dickinson R. Debevoise, U.S.D.J.

Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**AFFIDAVIT OF DAVID O'NIELL**

STATE OF NEW MEXICO     )
                              : ss.
COUNTY OF BERNALILLO     )

DAVID O'NIELL, being duly sworn, deposes and says:

1. I am a licensed private investigator in the State of New Mexico. I have been a private investigator since December 4, 2007, in the State of New Mexico. Prior to that, I worked for the United States Customs and retired from Home Land Security.

2. On October 30, 2008, I received a telephone call from an individual identifying himself as Todd Stefan, who left a voicemail message and asked that I return his call on telephone number (323) 939-5998, x-112. I returned the call on Friday morning, October 31, 2008, at approximately 9:31 a.m. The extension he provided did not ring through. The phone system, however, provided a security department option, which I selected, and Mr. Stefan answered the phone. Mr. Stefan indicated that the RNC was looking for experts such as me to assist Republican poll challengers in New Mexico on election day (November 4, 2008), and afterwards.

3. Mr. Stefan wanted to know my hourly charging rates, which I provided to him. He also asked that I send a copy of my CV by fax.

4. I asked again who would be hiring me. He responded that it would be the RNC. There was no question in my mind that he was referring to the Republican National Committee and he confirmed that in his comments to me.

5. Mr. Stefan stated said that they were anticipating long hours on election day, and that after the election they wanted me to help identify voters. The RNC was seeking the services of "experts" such as myself to run down information for the Republican challengers. Mr. Stefan sounded desperate to obtain my services and asked if I knew of any other investigators that might be interested in working on this project.

6. Based on this conversation with Mr. Stefan, at approximately 10:29 AM on October 31, 2008, I contacted a colleague of mine by the name of David Keylon, who is also a licensed private investigator in New Mexico. I indicated to Mr. Keylon that I had been contacted by Stefan asking if I knew of any investigators who would be interested in the work the RNC had, and gave Mr. Keylon Mr. Stefan's telephone number. Later that day, at 2:00PM, Mr. Keylon called me back, indicating he had spoken with Mr. Stefan and had agreed to take the work on election day and afterwards.

_David O'Niell_
David O'Niell

Subscribed and sworn to before me this 2nd day of November, 2008 by David O'Niell.

Notary Public

[Seal]

OFFICIAL SEAL
ANTONIA ROYBAL-MACK
NOTARY PUBLIC - STATE OF NEW MEXICO
My Commission Expires: 6/27/2010

Exhibit 4

October 17, 2008 Friday 3:07 AM GMT

NM Republican Party finds 28 suspect voters

**BYLINE:** By MELANIE DABOVICH, Associated Press Writer

**SECTION:** STATE AND REGIONAL

**LENGTH:** 850 words

**DATELINE:** ALBUQUERQUE N.M.

The Republican Party of New Mexico alleges 28 people voted fraudulently in one Albuquerque state House district in the June Democratic primary.

Party representatives said at a news conference Thursday they found the suspect voters in a review of 92 newly registered voters in House District 13.

"We really have a bombshell evidence of voter fraud in the 2008 primary in Albuquerque," said State Rep. Justine Fox-Young, an Albuquerque Republican. "We are presenting undeniable proof that there was voter fraud in the June election."

But the head of an Albuquerque community organization that registers voters charges the Republicans' claims are overblown and they are trying to scare people ahead of the Nov. 4 election.

The Republicans released voter registration cards for 10 of the suspect voters, saying they showed missing or inaccurate Social Security numbers or birth dates.

In some cases, more than one voter was registered using the same Social Security number. In others, people who the Republicans said had no Social Security number on public record were registered.

State Republican Secretary Nazarena "Nina" Martinez said the party is "greatly concerned" by the lack of attention to this issue by District Attorney Kari Brandenburg and state Attorney General Gary King.

"As we speak, votes are being cast through absentee ballots. We do not have the luxury to wait until Nov. 4 another 19 days to resolve this matter," Martinez said. "This matter must be resolved now. It must be resolved today."

The party filed a Freedom of Information Act to review secretary of state and Bernalillo county clerk voting history records to conduct the review.

Brandenburg said the allegations are part of an ongoing investigation. FBI agents met last week with Bernalillo County clerk Maggie Toulouse Oliver after she notified authorities about an estimated 1,500 possibly fraudulent voter registration cards.

"Every single case we get is handled the same way. We seek justice based on a thorough investigation and evidence," Brandenburg told The Associated Press in a telephone interview.

A spokesman for King did not immediately return a call late Thursday seeking comment.

Pat Rogers, an attorney who advises the state GOP, says the party plans to turn the suspect registration cards over to King's and Brandenburg's offices.

Fox-Young said several of the suspect voters were registered by the Association of Community Organizations for Reform Now, known as ACORN, an advocacy group for low-income people that has come under fire in recent weeks for its voter registration practices.

On Thursday, the FBI announced a national investigation into whether ACORN has helped foster voter registration fraud. The organization also is being investigated for fraud in Nevada, Connecticut, Missouri and at least five other states. Election officials also have recently questioned the group's voter forms in Ohio and North Carolina.

ACORN has said it has registered 1.3 million young people, minorities and poor and working class voters nationwide most of whom tend to be Democrats.

Matthew Henderson, head organizer for ACORN in the Southwest region, said virtually all of the 80,000 New Mexico voters they registered are legitimate.

The group flags suspected registration cards, tracks voter registration agents connected to each card and has fired 46 employees for fraudulent violations, he said.

He said the Republicans are trying to "whip up hysteria" before the election, just as they did in 2004.

"They're scared, they're desperate and they don't want to see more people participate in the election process," Henderson said.

Fox-Young said she believes ACORN is acting as a "quasi-criminal" organization.

Toulouse Oliver said she had not seen the state Republican Party's findings, but suggested the party should notify law enforcement to prevent future problems.

"This is the first I'm hearing of it," she said in an interview. "We're not law enforcement. We don't investigate. The best we can do is identify and red flag and sequester the documents and turn them over to law enforcement and we'll gladly do that."

Oliver said her office checks registrations as they come in. Cards raise red flags if they have the same name as a voter who's already registered, but carry a different birth date or Social Security number, or have addresses that don't exist.

Her office tries to contact the voter to see if a mistake can be corrected, but if that's not possible, the card goes into the questionable pile and is not added to the voter rolls.

Fox-Young said they targeted state House District 13 for review due to high activity by third-party groups and the large volume of new voter registrations there.

"Anybody in politics knew that third-party groups were interested in those races," Fox-Young said. She said Republican registration cards and those for voters who declined to state a party also were reviewed, but the state GOP did not have the resources to present their findings for more voters.

"It was not specific toward political parties," she said, when asked why only Democratic voters were named as suspected fraud cases.

# Exhibit 5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DORA ESCOBEDO and LYDIA     §
OLIVAREZ                            §
                                    §
     Plaintiffs,                  §
                                    §
        v.                      §
                                    §
PATRICK J. ROGERS AND       §
AL ROMERO,                       §
                                    §
     Defendants.                §

## <u>VERIFIED COMPLAINT</u>

## <u>NATURE OF THE ACTION</u>

This action seeks to enjoin Defendant individuals from threatening and intimidating minority race voters who seek to cast their ballots in the November 4, 2008 General Election. Defendants have thus far publicly questioned Plaintiffs' eligibility to vote, released Plaintiffs' names and other personal information to the media, threatened to turn over Plaintiffs' personal information to law enforcement officials for investigation into voter fraud, and appeared at Plaintiffs' homes to further intimidate them from voting. Without this Court's intervention, Defendants will continue to threaten and intimidate Plaintiff voters, thus hindering their exercise of the right to vote. Plaintiffs seek an injunction prohibiting Defendants from further threatening and intimidating them and prohibiting Defendants from challenging their eligibility to vote.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action and over the parties.  Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1983 and common law. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in Bernalillo County, New Mexico and Defendants reside in New Mexico.

## PARTIES

### Plaintiffs

2.     Plaintiff DORA ESCOBEDO is a citizen of the United States.  She resides in Albuquerque, New Mexico and is a registered and eligible voter of Bernalillo County, NM.  Plaintiff ESCOBEDO is Latina.

3.     Plaintiff LYDIA OLIVAREZ is a citizen of the United States.  She resides in Albuquerque, New Mexico and is a registered and eligible voter of Bernalillo County, NM.  Plaintiff OLIVAREZ is Latina.

### Defendants

4.     Defendant PATRICK J. ROGERS resides in New Mexico and is subject to the laws of New Mexico and the United States.

5.     Defendant AL ROMERO resides in New Mexico and is subject to the laws of New Mexico and the United States.

## ALLEGATIONS OF FACT

6.     Plaintiff DORA ESCOBEDO voted for the first time in the June 2008 Primary Election in Bernalillo County, NM.  Plaintiff ESCOBEDO had previously registered to

vote on March 28, 2008, approximately seven months after becoming a naturalized citizen. Plaintiff ESCOBEDO is sixty-seven years old.

7.    Plaintiff LYDIA OLIVAREZ voted in the June 2008 Primary Election in Bernalillo County, NM.  Plaintiff OLIVAREZ had previously registered to vote on February 28, 2008, after moving to New Mexico from California.  Plaintiff OLIVAREZ is sixty-three years old.

8.    On Thursday, October 16, 2008, Defendant ROGERS participated in a press conference convened by the New Mexico Republican Party to announce that it believes at least 28 people cast fraudulent votes in the June 2008 Democratic Primary Election for State Representative in District 13.

9.    At the press conference, Defendant ROGERS and other individuals distributed to reporters a packet of documents containing information about 28 voters that it claimed "suggests serious questions about the validity of those votes."

10.    This press packet further stated "[t]he information immediately available indicates significant indicia of fraud, identity theft issues or serious identity questions.  The results of the investigation (first 10 summarized below) of all 28 will be provided to the Attorney General, District Attorney and the FBI with a request for a full and immediate investigation."

11.    Defendant ROGERS was further quoted in an Associated Press report of October 16, 2008 saying that the information in the press packet would be turned over to law enforcement officials for investigation into voter fraud.

12.    The press packet named 10 individuals as having questionable votes, including Plaintiff ESCOBEDO and Plaintiff OLIVAREZ.  The press packet included copies of the

ten individuals' original voter registration applications which showed their addresses, phone numbers, dates of birth, and signatures.  The press packet included additional notations regarding "indicia of fraud" for each individual.

13.     The press packet stated, for Plaintiff ESCOBEDO, that a person with her name had relied on a Spanish language court interpreter during a legal proceeding in 1995 and that that such reliance was "a common occurrence for illegal aliens in the court system." The press packet further stated that "No SSN or date of birth is associated with the voter, highly unusual based on a resident of at least 9 years."  Finally, the press packet included notations revealing the results of a search of Plaintiff ESCOBEDO's credit history.

14.     The press packet stated, for Plaintiff OLIVAREZ, that she had two social security numbers, various "aliases" and no New Mexico driver's license.  The notations also stated that a search regarding Plaintiff OLIVAREZ's social security number indicated "fraud or identity theft."

15.     On Wednesday, October 22, 2008 Defendant ROMERO appeared at the home of Plaintiff ESCOBEDO and asked her repeatedly to let him into her house.  Defendant ROMERO represented himself as an investigator and stated that there was a problem with Plaintiff ESCOBEDO's voter registration.

16.     Defendant ROMERO demanded to see Plaintiff ESCOBEDO's identification card, accused Plaintiff ESCOBEDO of being a non-U.S. citizen, threatened to call immigration authorities to her house, and laughed at her when Plaintiff ESCOBEDO explained that she possessed naturalization documents.

17.     Defendant ROMERO remained outside Plaintiff ESCOBEDO'S home for approximately one hour claiming throughout that time that he was checking discrepancies

in voter registration.  He further stated that he was working for a private attorney named
PATRICK J. ROGERS.

18.     Also on Wednesday, October 22, 2008 Defendant ROMERO appeared at the
home of Plaintiff OLIVAREZ.

19.     Plaintiff OLIVAREZ was not home at the time.   Another resident of the
household sent Defendant ROMERO away and contacted Plaintiff OLIVAREZ regarding
the visit and its connection to claims of voter fraud in Bernalillo County.

20.     Plaintiffs ESCOBEDO and OLIVAREZ feel threatened and intimidated by the
actions of Defendants and believe that they are being targeted for accusations of voter
fraud because of their race and national origin as well as their voting in the 2008 Primary
and General Elections.   Plaintiff ESCOBEDO has mailed her ballot to vote in the
November 2008 General Election and Plaintiff OLIVAREZ hopes to cast her ballot by
mail in the November 2008 General Election.  Plaintiffs ESCOBEDO and OLIVAREZ
are afraid that Defendants will challenge their ability to vote in the November 2008
General Election and seek to invalidated their ballots before they are counted.

21.     Defendants' actions against Plaintiffs were intentional, and performed with
callous, deliberate and reckless disregard for Plaintiffs' rights under both the laws and
Constitution of the United States.

<u>**COUNT I**</u>

THE VOTING RIGHTS ACT OF 1965, 42 U.S.C. § 1971(b)
(AGAINST ALL DEFENDANTS)

22.     Plaintiffs incorporate by reference all preceding allegations as if fully set forth
herein.

23.    Defendants violated 42 U.S.C. § 1971(b) by intimidating, threatening, coercing, and/or attempting to intimidate, threaten, or coerce Plaintiffs for the purpose of interfering with the right of Plaintiffs to vote for candidates for federal office in the November 2008 General Election.

## COUNT II

### THE VOTING RIGHTS ACT OF 1965, 42 U.S.C. § 1973i (b)
### (AGAINST ALL DEFENDANTS)

24.    Plaintiffs incorporate by reference all preceding allegations as if fully set forth herein.

25.    Defendants violated 42 U.S.C. § 1973i (b) by intimidating, threatening, or coercing, and/or attempting to intimidate, threaten, or coerce Plaintiffs for voting or attempting to vote.

## COUNT III

### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### (AGAINST ALL DEFENDANTS)

26.    Plaintiffs incorporate by reference all preceding allegations as if fully set forth herein.

27.    Defendants violated 42 U.S.C. 1985 (3) by conspiring to prevent by force, intimidation, or threat, Plaintiffs from voting for candidates for federal office in the November 2008 General Election.

28.    Defendants' actions against Plaintiffs were taken with racially discriminatory intent and effect.

29.    Defendants acted intentionally and/or with reckless, deliberate and callous indifference to Plaintiffs' rights.

30.     Defendants' acts and omissions were the direct and proximate cause of harm to Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray this Court provide the following relief:

A.     Assumer jurisdiction over this matter;

B.     Declare that Defendants violated Plaintiffs' rights secured by the Voting Rights Act as alleged herein;

C.     Declare that Defendants' violated Plaintiffs' rights secured by 42 U.S.C. 1985 (3) as alleged herein;

D.     Enjoin Defendants, their officers, agents, employees and all persons in active concert with them, from undertaking activities which are designed to intimidate, threaten or coerce voters concerning their right to vote in an election or which are designed to in any way interfere with or discourage lawful exercise of the franchise;

E.     Enjoin Defendants, their officers, agents, employees and all persons in active concert with them, from undertaking activities to challenge the validity or legitimacy of Plaintiffs' votes cast in the November 4, 2008 General Election or the June 2008 Primary Election;

F.     Award Plaintiffs reasonable costs and attorneys fees incurred in bringing this action;

G.     Award such other and further relief as the Court may deem appropriate, including injunctive and declaratory relief as may be required in the interests of justice.

## VERIFICATION

I, Lydia Olivarez, a citizen of the United States and resident of the State of New Mexico, am a plaintiff in this action. I have read the foregoing Verified Complaint and declare under penalty of perjury under the laws of the United States of America that the foregoing facts are correct and true to the best of my knowledge and belief and that those factual matters that are stated upon information and belief are believed by me to be true.

_Lydia Olivarez_
Lydia Olivarez

DATED: October 27, 2008

Respectfully submitted,

_Nina Perales_
Nina Perales (seeking admission *Pro Hac Vice*)
Diego Bernal (seeking admission *Pro Hac Vice*)
Marisol L. Perez (seeking admission *Pro Hac Vice*)
MEXICAN AMERICAN LEGAL DEFENSE AND
EDUCATIONAL
FUND, INC.
110 Broadway, Suite 300
San Antonio, Texas 78205
(210) 224-5476
Facsimile (210) 224-5382

_Joseph A. Sapien_
Joseph Sapien
Phillip Sapien
SAPIEN LAW, L.L.C.
P.O. Box 965
Albuquerque, NM 87103-0965
(505) 842-5979
(505) 842-6002 Fax

Attorneys for Plaintiffs

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| DORA ESCOBEDO, LYDIA OLIVAREZ | PATRICK J. ROGERS, AL ROMERO |

**(b)** County of Residence of First Listed Plaintiff    **Bernalillo**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    **Bernalillo**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Mexican American Legal Defense and Educational Fund, 100 Broadway, Suite 300, San Antonio, TX 78205 (210) 224-5476  &  SAPIEN LAW, LLC, P.O. Box 965, Albuquerque, NM 87103-0965  (505) 842-5979

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☒ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1971(b), 42 U.S.C. § 1973(b), 42 U.S.C. 1985(3)
Brief description of cause:
Defs. violated statutes when they intimidated and conspired to intimidate Plfs. from voting.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE
10/27/2008

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Exhibit 6



COPY

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

EMILY GARCIA, FRANCISCO
MARTINEZ, ANTHONY PEDREGO, on
behalf of themselves and all others
similarly situated, and JENAIS GRIEGO,

    Plaintiffs,

    v.

JUSTINE FOX-YOUNG, AL ROMERO,
and JOHN/JANE DOES,

    Defendants.

ENDORSED
FILED IN MY OFFICE THIS

OCT 27 2008

*Juanita M. Duran*
CLERK DISTRICT COURT

CLASS ACTION

CV 2008 11178

PATRICIA SERNA

## COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Emily Garcia, Francisco Martinez, and Anthony Pedrego are three of

many private individuals whose confidential information (dates of birth and social

security numbers) on their voter registrations was obtained, copied, conveyed and/or used

by Defendants Fox-Young and John/Jane Does as representatives of the Republican Party

of New Mexico. Specifically, press packets given to the media by Defendants at an

October 16, 2008, press conference disclosed confidential dates of birth. The press

packets also evidenced the fact that voters' social security numbers had been copied and

used by Defendants Doe to run credit checks or other background checks on Plaintiffs.

Defendant Al Romero is a private investigator who used the confidential

information to engage in harassing acts against Plaintiff Garcia and her granddaughter,

Jenais Griego, in violation of the state constitutional and statutory protections against

voter intimidation.

1

CLASS ACTION COMPLAINT

1          Plaintiffs bring claims sounding in tort to remedy the unlawful invasion of their

2    privacy and other unlawful acts. Plaintiffs also seek declaratory and injunctive relief to

3    enjoin the unlawful conduct and to obtain return of all documents containing confidential

4    information.

5                             **JURISDICTION AND VENUE**

6        1.     This Court has jurisdiction over all causes of action asserted herein

7    pursuant to the New Mexico Constitution, the New Mexico Declaratory Judgment Act,

8    NMSA 1978, §§ 44-6-1 to 44-6-15 (1975), and common law.

9        2.     Venue is proper pursuant to NMSA 1978, § 38-3-1 (1988). All acts

10   complained of herein occurred in Bernalillo County, New Mexico. The claims for

11   injunctive relief are brought pursuant to NMRA 2008 Rules 1-057 and 1-066, and this

12   Court's inherent power in equity.

13                                    **PARTIES**

14       3.     Plaintiff Emily Garcia resides in Bernalillo County, New Mexico. Ms.

15   Garcia registered to vote in Bernalillo County in 2005.

16       4.     Plaintiff Jenais Griego resides in Bernalillo County, New Mexico. She is

17   the granddaughter of Plaintiff Emily Garcia.

18       5.     Plaintiff Francisco Martinez resides in Bernalillo County, New Mexico.

19   He registered to vote in Bernalillo County in 2008.

20       6.     Plaintiff Anthony Pedrego resides in Bernalillo County, New Mexico. He

21   registered to vote in Bernalillo County in 2008.

22       7.     Defendant Justine Fox-Young resides in Bernalillo County, New Mexico.

23   She is sued in her individual capacity.

24

25

2

CLASS ACTION COMPLAINT

1    8.    Defendant Al Romero, a private investigator, resides in Bernalillo County,

2  New Mexico. Upon information and at all times relevant, Defendant Al Romero acted as

3  an agent for the New Mexico Republican Party and/or Albuquerque attorney Patrick J.

4  Rogers.

5    9.    Defendants John/Jane Does are unidentified agents of the New Mexico

6  Republican Party or other persons who unlawfully obtained, copied, conveyed, and used

7  the social security numbers and dates of birth of Plaintiffs Garcia, Martinez, and Pedrego

8  and others similarly situated.

9                                  **FACTS**

10    VOTERS' SOCIAL SECURITY NUMBERS AND DATES OF BIRTH

11    10.    In pertinent part, NMSA 1978, § 1-4-5 provides:

12    E. . . . It is unlawful for the qualified elector's date of birth or any portion of the
       qualified elector's social security number required on the certificate of registration
13     to be copied, conveyed or used by anyone other than the person registering to
       vote, either before or after it is filed with the county clerk, and by elections
14     administrators in their official capacity.

15    F.  A person who unlawfully copies, conveys or uses information from a
       certificate of registration is guilty of a fourth degree felony.

16    11.    Plaintiffs and all others similarly situated have an objectively reasonable

17  expectation of privacy in protecting their social security numbers and dates of birth from

18  public exposure.

19    12.    On October 16, 2008, Defendant Fox-Young held a news conference,

20  during which Defendant Fox-Young stated that the Republican Party of New Mexico

21  searched voter registration records for 92 newly registered New Mexican voters who

22  voted in the June 2008 primary election.

23

24

25
                                    3

13.    Defendant Fox-Young gave press packets to members of the media. The press packets evidenced the fact that Defendant Does, apparently on behalf of the Republican Party of New Mexico, had copied and used the social security numbers of the 92 voters, allegedly to attempt to verify the validity of the registrations.

14.    Upon information, Defendants Fox-Young and Does obtained copies of voter registration cards with non-redacted confidential personal information from a County Clerk's office within the State of New Mexico.

15.    All of the voter registration information provided by Defendant Fox-Young in the press packet was from voters registered to vote in Bernalillo County.

16.    At the aforementioned press conference, Defendant Fox-Young claimed that 28 of the 92 registrations were suspect and that many of the voter registrations used social security numbers of people other than the registrant's.

17.    According to the press packet and the statements of Defendant Fox-Young, Defendant Does ran credit checks and driver's license checks and/or other identity/background checks using voters' social security numbers and dates of birth.

18.    From the press packet, it is apparent that Defendants Doe copied and used the social security numbers of Plaintiffs Garcia, Martinez and Pedrego.

19.    Defendants' allegations regarding the social security numbers of Plaintiffs Garcia, Martinez and Pedrego are inaccurate and their voter registrations are legal.

20.    In the press packets, Defendants Fox-Young and Doe unlawfully conveyed the dates of birth from the voter registrations of Plaintiffs Garcia, Martinez and Pedrego.

4

CLASS ACTION COMPLAINT

21.     Plaintiffs Garcia, Martinez and Pedrego were surprised and distressed that their confidential information from their voter registrations had been obtained and used by Defendants and released to members of the media.

22.     The obtaining, copying, conveying, and using of confidential information from voter registration cards by Defendants Fox-Young and Does was an act of intimidation aimed at voters and constitutes interference with the Plaintiffs' right to vote.

23.     The threat of public exposure of confidential information likely chills and deters private individuals from registering to vote and voting.

<u>PRIVATE INVESTIGATOR AL ROMERO</u>

24.     On Wednesday, October 22, 2008, at approximately 4:30 p.m., Defendant Romero came to Plaintiff Garcia's residence.  Emily Garcia was not home, but Plaintiff Jenais Griego, her granddaughter, was there.

25.     Defendant Romero asked to speak to Ms. Garcia.  Ms. Griego informed Defendant Romero that Ms. Garcia was not home.

26.     Ms. Griego asked Defendant Romero for identification. Defendant Romero identified himself as a private investigator with a laminated card showing his name.

27.     Defendant Romero asked to enter the house and Ms. Griego permitted him to come into the living room.

28.     Once inside the living room, Defendant Romero began asking questions about Ms. Garcia.  The questions included but were not limited to: whether Ms. Garcia had voted; whether Ms. Garcia was a citizen; whether Ms. Griego was aware that there were discrepancies with Ms. Garcia's voter registration.

5

CLASS ACTION COMPLAINT

29.     Defendant Romero had a copy of Ms. Garcia's voter registration card that was identical to the one previously released by Defendant Fox-Young at the October 16, 2008, press conference.

30.     Defendant Romero also informed Ms. Griego that he was investigating whether Ms. Garcia's voter registration was valid and that he was investigating Ms. Garcia's social security number.

31.     Defendant Romero asked Ms. Griego whether she planned on voting.

32.     Defendant Romero asked Ms. Griego whether her grandmother, Ms. Garcia, still planned on voting. Ms. Griego informed Defendant Romero that her grandmother would still be voting.

33.     Defendant Romero then became very agitated and stated that Ms. Garcia's vote might not count.

34.     Defendant Romero then stood up and left the residence.

35.     Upon information, Defendant Romero was acting as an agent of the Republican Party of New Mexico and/or Albuquerque attorney Patrick J. Rogers. Defendant Romero has stated to others that he was an agent of Albuquerque attorney Patrick J. Rogers when investigating other voter registrations the same day.

36.     Plaintiffs Garcia and Griego were frightened and distressed by Defendant Romero's conduct.

## CLASS ACTION ALLEGATIONS

37.     This action is brought and may properly be maintained as a class action pursuant NMRA 2008, Rule 1-023.  Plaintiffs bring this action on behalf of themselves and all others similarly situated as representative members of the following proposed

6

1   class: all private individuals whose dates of birth or social security numbers, on their

2   voter registration cards, was obtained, copied, conveyed and/or used by Defendants.

3        38.    The proposed Class is so numerous that the individual joinder of all its

4   members in one action is impracticable. While the exact number and the identities of

5   Class members are unknown at this time, the voter registrant Class size consists of at

6   least 92 individuals.

7        39.    Common questions of law and fact arising out of the claims at issue exist

8   as to all members of the class and predominate over any individual issues. These

9   common legal and factual questions include the issue of unlawful copying, conveying

10  and use of class members' confidential social security numbers and dates of birth.

11       40.    The claims of Plaintiffs Garcia, Martinez and Pedrego are typical of the

12  claims of all class members. Plaintiffs Garcia, Martinez and Pedrego have suffered the

13  same invasion of privacy as all other class members.

14       41.    Plaintiffs Garcia, Martinez and Pedrego will fairly and adequately protect

15  the interests of all class members, in that they have no irreconcilable conflicts with or

16  interests materially antagonistic to those of the other class members.

17       42.    Plaintiffs have retained counsel experienced in the prosecution of class

18  actions and the balancing of personal privacy rights against public disclosure.

19       43.    To the extent that it is an element for establishing class certification for

20  certain causes of action, a class action is superior to other available methods for the fair

21  and efficient group-wide adjudication of this controversy and, as applicable, possesses

22  substantial benefits. Individual joinder of all members of the class is impracticable, and

23  no other group method of adjudication of all claims asserted herein is more efficient and

24  manageable while at the same time providing all the remedies available to remedy the

25

1    invasion of their right to privacy.  Individualized litigation would also present the risk of

2    varying, inconsistent, or contradictory judgments and would magnify the delay and

3    expense to all parties and to the court system resulting from multiple adjudications of the

4    same issues.  The conduct of this action as a class action presents fewer management

5    difficulties, conserves the resources of the parties and the court system, and better

6    protects the rights of all parties as compared to other methods for the group-wide

7    adjudication of this controversy.  Thus, both the parties and the Court achieve substantial

8    benefits from the prosecution of this action on a class-wide basis by avoiding the burden

9    of multiple cases involving identical claims.

10        44.    Plaintiffs contend that Defendants have invaded the privacy of all class

11    members, conspired to do so, and violated N.M. const. art II, § 8, NMSA 1978, § 1-20-14

12    and §1-20-1.

13                  **COUNT ONE**

14          **(INVASION OF PRIVACY - DEFENDANTS**

15              **FOX-YOUNG and DOES)**

16        45.    Plaintiffs Garcia, Martinez and Pedrego on their own behalf and on behalf

17    of the class members reallege and incorporate by reference the foregoing paragraphs as

18    though set forth in full.

19        46.    Plaintiffs Garcia, Martinez and Pedrego and all persons similarly situated

20    have a legally recognized privacy interest and a reasonable expectation of privacy in

21    protecting their dates of birth and social security numbers, from public disclosure without

22    their consent, and such disclosure represents a serious invasion of their privacy.

23        47.    In addition to the legally recognized privacy interest and reasonable

24

25

1    expectation of privacy in protecting their dates of birth and social security numbers,

2    Plaintiffs Garcia, Martinez and Pedrego and all persons similarly situated have a legally

3    recognized privacy interest and a reasonable expectation of privacy in protecting their

4    personal information, including their names, addresses, and telephone numbers, from

5    public disclosure on the same document as their dates of birth and/or social security

6    numbers, without their consent, and such disclosure represents a serious invasion of their

7    privacy.

8        48.    By unlawfully obtaining, copying, conveying, and using the confidential

9    personal information of Plaintiffs Garcia, Martinez and Pedrego and all persons similarly

10   situated, and publicly disclosing the confidential personal information, Defendants are

11   liable for the tort of invasion of privacy.

12       49.    As a direct and proximate cause of the conduct of Defendants, Plaintiffs

13   and those similarly situated to them have sustained harm for which they are entitled to

14   compensatory damages.

15       50.    Defendants acted in a willful, malicious, intentional and unlawful manner,

16   and in reckless disregard of Plaintiffs' rights and the rights of those similarly situated to

17   them, and Plaintiffs and those similarly situated to them demand and are entitled to

18   exemplary or punitive damages.

19

20

21

22

23

24

25

9

CLASS ACTION COMPLAINT

## COUNT TWO

### (CIVIL CONSPIRACY - DEFENDANTS FOX-YOUNG and DOES)

51.     Plaintiffs Garcia, Martinez and Pedrego on their own behalf and on behalf of the class members reallege and incorporate by reference the foregoing paragraphs as though set forth in full.

52.     A conspiracy existed between and with knowledge of Defendants Fox-Young and Does to harm Plaintiffs and class members.

53.     Specific wrongful acts were carried out by the aforementioned Defendants pursuant to the conspiracy, specifically the unlawful acts described in Count One, above.

54.     As a direct and proximate cause of the conduct of Defendants, Plaintiffs and those similarly situated to them have sustained harm for which they are entitled to compensatory damages.

55.     Defendants acted in a willful, malicious, intentional and unlawful manner, and in reckless disregard of Plaintiffs' rights and the rights of those similarly situated to them, and Plaintiffs and those similarly situated to them demand and are entitled to exemplary or punitive damages.

## COUNT THREE

### (NEGLIGENCE - DEFENDANTS FOX-YOUNG and DOES)

56.     Plaintiffs Garcia, Martinez and Pedrego on their own behalf and on behalf of the class members incorporate the allegations contained in the preceding paragraphs as though fully set out herein.

10

CLASS ACTION COMPLAINT

57.    Defendants Fox-Young and Does have a duty to act reasonably with respect to the confidential information of Plaintiffs Garcia, Martinez, and Pedrego and those similarly situated.

58.    Defendants breached their duty to Plaintiffs Garcia, Martinez, and Pedrego and those similarly situated by obtaining, copying, conveying, using and disclosing their confidential information to the public.  Such breach constitutes negligence *per se.*

59.    As a direct and proximate cause of the conduct of Defendants Fox-Young and Does, Plaintiffs Garcia, Martinez, and Pedrego and those similarly situated have sustained harm for which they are entitled to compensatory damages.

60.    Defendants Fox-Young and Does acted in a willful, malicious, intentional and unlawful manner, and in reckless disregard of the rights of Plaintiffs Garcia, Martinez, and Pedrego and the rights of those similarly situated. Plaintiffs Garcia, Martinez, and Pedrego and those similarly situated demand and are entitled to exemplary or punitive damages.

## **COUNT FOUR**

### **(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS -DEFENDANT ROMERO)**

61.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though set forth in full.

62.    Defendant Romero's conduct toward Plaintiffs Garcia and Griego was extreme and outrageous.

63.    Defendant's conduct was intentional or in reckless disregard of the rights of Plaintiffs Garcia and Griego.

11

64.     The mental distress of Plaintiffs Garcia and Griego was extreme and severe; and there is a causal connection between Defendant Romero's conduct and the mental distress of Plaintiffs Garcia and Griego.

65.     As a direct and proximate cause of the conduct of Defendant Romero, Plaintiffs Garcia and Griego have sustained harm for which they are entitled to compensatory damages.

66.     Defendant Romero acted in a willful, malicious, intentional and unlawful manner, and in reckless disregard of the rights of Plaintiffs Garcia and Griego, and Plaintiffs Garcia and Griego are entitled to exemplary or punitive damages.

## COUNT FIVE

### (PRIMA FACIE TORT - DEFENDANT ROMERO)

67.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though set forth in full.

68.     Alternatively, Plaintiffs Garcia and Griego allege as follows.

69.     Defendant Romero engaged in intentional, otherwise lawful acts against Plaintiffs Garcia and Griego.

70.     Defendant Romero engaged in acts against Plaintiffs Garcia and Griego with an intent to injure them, to intimidate them and to cause them emotional distress.

71.     Plaintiffs Garcia and Griego were damaged as a result of Defendant Romero's acts.

72.     There is insufficient justification for Defendant Romero's acts.

73.     As a direct and proximate cause of the conduct of Defendant Romero,

12

1    Plaintiffs Garcia and Griego have sustained harm for which they are entitled to

2    compensatory damages.

3         74.    Defendant Romero acted in a willful, malicious, intentional and unlawful

4    manner, and in reckless disregard of the rights of Plaintiffs Garcia and Griego, and

5    Plaintiffs Garcia and Griego are entitled to exemplary or punitive damages.

6

7                                 **COUNT SIX**

8                     **(DECLARATORY AND INJUNCTIVE RELIEF
                               - ALL DEFENDANTS)**

9         75.    Plaintiffs on their own behalf and on behalf of the class members reallege

10   and incorporate by reference the foregoing paragraphs as though set forth in full.

11        76.    N.M. const. art II, § 8 provides:

12
     All elections shall be free and open, and no power, civil or military, shall at any
13   time interfere to prevent the free exercise of the right of suffrage.

14        77.    NMSA 1978, § 1-20-14 provides:

15
     Intimidation consists of inducing or attempting to induce fear in any member of a
16   precinct board, voter, challenger or watcher by use of or threatened use of force,
     violence, infliction of damage, harm or loss or any form of economic retaliation,
17   upon any voter, precinct board member, challenger or watcher for the purpose of
     impeding or preventing the free exercise of the elective franchise or the impartial
18   administration of the election or Election Code [Chapter 1 NMSA 1978].
     Whoever commits intimidation is guilty of a fourth degree felony.
19
          78.    NMSA 1978, § 1-20-15 provides
20
     Conspiracy to violate the Election Code [Chapter 1 NMSA 1978] consists of
21   knowingly combining, uniting or agreeing with any other person to omit any duty
     or commit any act, the omission of which duty, or combination of such act, would
22   by the provisions of the Election Code constitute a fourth degree felony. Whoever
     commits conspiracy to violate the Election Code is guilty of a fourth degree
23   felony.

24                                       13

25   ───────────────────────────────────────────────
                        CLASS ACTION COMPLAINT

79.     Defendants' actions violated the rights of Plaintiffs and class members protected by N.M. const. art II, § 8.

80.     Defendants' actions against Plaintiffs and class members violated NMSA 1978, § 1-20-14 and §1-20-15.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.      declaratory judgment that Defendants have violated the rights of Plaintiffs and all persons similarly situated that are protected by N.M. const. art II, § 8;

2.      declaratory judgment that Defendants have violated NMSA 1978, § 1-20-14 and §1-20-15;

3.      an injunction, enjoining Defendants from engaging in the above-described conduct that violates N.M. const. art II, § 8, NMSA 1978, § 1-20-14 or §1-20-15;

4.      an injunction, enjoining Defendants from accessing, copying, conveying using or otherwise disclosing confidential personal information of Plaintiffs and all persons similarly situated, now or in the future, without their consent;

5.      an injunction ordering Defendants to return all documents, copies, electronic materials or any tangible items containing the confidential personal information of Plaintiffs and all persons similarly situated to the respective Plaintiff or class member;

6.      trial by jury on all issues so triable;

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7.  compensatory and punitive damages against all Defendants jointly and severally;

8.  pre- and post-judgment interest as allowed by law;

9.  costs and attorney fees as may be appropriate under applicable law; and

10.  such other and further relief as the Court deems just and proper.

Dated this 27th day of October 2008.

ACLU of NEW MEXICO

George Bach
Brendan Egan
Staff Attorneys
P.O. Box 566
Albuquerque, NM 87103
(505) 243-0046
(505) 266-5916 (fax)

PROJECT VOTE

Donald Wine II*
Election Counsel
739 8th Street SE, Suite 202
Washington, DC 20003
(202) 553-7532
(202) 546-2483 (fax)
*pending admission pro hac vice

15

CLASS ACTION COMPLAINT

# Exhibit 7

New Mexico Independent RSS Feed Log in

# THE NEW MEXICO INDEPENDENT™
A CENTER FOR INDEPENDENT MEDIA SITE

[ Search ]

Home
'08 Election
Environment
Growth
Border
Labs
Culture
Poverty
Education
Health
Blog
Send a News Tip
GOP lawyer refuses to deny private eye visits (updated)
Two in ACORN controversy say investigator's visits were intimidating

By Gwyneth Doland 10/23/08 7:45 PM



ALBUQUERQUE – Republican Party attorney Pat Rogers refused to say Thursday if a private detective who visited the addresses of two of the 10 Albuquerque voters cited at a news conference last week about voter fraud was working for the GOP.

Project Vote, a nonprofit that works with the community-organizing group ACORN, charged yesterday that the 10 voters are eligible voters and that the visits constitute voter intimidation. The group called on U.S. Attorney Gregory J. Fouratt to investigate.

When asked by the New Mexico Independent if the private investigator worked for Rogers' law firm, Rogers said, "I have no interest in responding to ACORN's accusation."

Reminded that the accusations came from the voters themselves, Rogers said, "You need not to accept what ACORN says."

When asked the question again, Rogers said, "I am not responding to any questions. I am not being quoted. This is off the record."

The investigator's visits were confirmed by the Independent after ACORN provided names and contact information for the women.

Guadalupe Bojorquez said a man who identified himself as a private investigator by the name of Al Romero visited the home of her 67-year-old mother on Wednesday.

"She calls me and she's panicked because there is this man outside and he's telling her he's an investigator and he wants to come in to the house," Bojorquez told NMI. She said her mother then put the man on the phone.

"I asked him, but he wouldn't tell me who he worked for. He just said he wanted to verify that she was a legitimate voter and he wanted to see her documents. I told him 'No,' and we argued for a little bit.

"He said 'You have to realize we're just trying to protect the people, we just want to make sure that she's a legitimate voter and if she votes and she's not supposed to, then it's illegal.'
"He was pressuring me so much that I told him that she's not going to do anything until she speaks to her attorney."
Bojorquez said she asked the man several times whom he worked for. Eventually, she said, "He told me he worked for Pat Rogers."



GOP lawyer Pat Rogers

Rogers is the Republican attorney who also made claims of voter fraud in 2004 and 2006. He was cited in the federal Department of Justice report about the firing of U.S. attorneys as one of the New Mexico GOP activists who complained to the Department of Justice about then-U.S. Attorney David Iglesias.

By law, private investigators are licensed by the state Regulation and Licensing Department. According to the department's Web site, there is an Alfredo Romero who has a current private investigator license. In addition, three men named Albert or Alberto Romero have current security guard licenses.

Jenais Griego told NMI that she too had been visited by a private investigator on Wednesday. Her grandmother, Emily Garcia, was one of the people whom Republicans described last week as an ineligible voter.

"I asked him if he had a badge and he pulled out a white and blue laminate card with his name on it," Griego. "It wasn't even a badge, but it said 'Al Romero, private investigator.' He came in and he started asking me about my grandmother and I was trying to tell him that she didn't live here. He's like 'OK, so let me just write some stuff down.'"

Griego said that Romero asked her questions about her grandmother's voter registration card; her grandmother lives in a trailer down the street, but receives her mail at the house, she said.

"It freaked me out when he got upset, when I did tell him that, regardless of what happens, my grandmother is voting and it's OK for her to vote."

"He tried to tell me to tell her to be careful when she's voting. He was trying to tell me stuff to scare her from voting."

Bojorquez also said her mother felt wary about the visit.

"My mom is confused because she doesn't understand why she's being put through this because she voted. She doesn't trust anybody anymore," Bojorquez said, requesting that her mother's name not be published again.

In its letter to U.S. Attorney Fouratt, Project Vote said the private investigator's visits constitute a form of "intimidation and suppression" that violates the Voting Rights Act of 1965.

"We request that you conduct an immediate investigation into the attempts by the Republican Party of New Mexico to intimidate minority, first-time voters into not exercising their right to vote," the letter said.

NMI reporter Trip Jennings contributed to this story.

UPDATE: Last week, Rogers told the Associated Press that the Party had hired a private investigator:

Rogers said a private investigator hired by the state Republican Party found Rivera and others like her have Social Security numbers on their voter registration forms that are being used by other people. They may be legitimate voters and could be victims of identity theft.

Thanks to Talking Points Memo for pointing that out, and for linking to us today!

Oh, and we're on Daily Kos as well.



Print 🖷     Subscribe to RSS 📶

Add New Comment
Please login to comment.

OPTIONS ➕

Viewing 1 Comment

# Exhibit 8

The Associated Press State & Local Wire

October 24, 2008 Friday 12:19 AM GMT

Woman says mother was harassed over vote

**BYLINE:** By HEATHER CLARK, Associated Press Writer

**SECTION:** STATE AND REGIONAL

**LENGTH:** 726 words

**DATELINE:** ALBUQUERQUE N.M.

A woman has filed a complaint claiming her 67-year-old mother was reduced to tears by a man who told her he was a private investigator with ties to the state Republican Party and questioned her right to vote. Bernalillo County Clerk Maggie Toulouse Oliver confirmed Thursday she received the complaint and turned it over to the FBI.
A national voters rights group, Project Vote, has called on U.S. Attorney Greg Fouratt to investigate the state Republican Party and its contractors for violating the Voter Rights Act by trying to intimidate minority first-time voters into not casting their ballots.
Spokesmen for the FBI and U.S. Attorney's Office declined comment.
Michael Slater, executive director of Project Vote, said he believes New Mexico's Republican Party is part of a national effort to intimidate voters based on their ethnicity ahead of the Nov. 4 election.
"I am beginning to believe that there is a real effort to create the impression that new registrants are going to be under surveillance and scrutiny before they cast a vote. I think it's deliberate and it's happening in other states," Slater said.
State Republican Party spokeswoman Shira Rawlinson said the party has "numerous volunteers and attorneys" working on voter fraud issues.
She declined to answer questions about the private investigator, saying only that the party "takes all claims of voter fraud and intimidation very seriously" and will continue to provide any documents about suspected fraud that it finds to law enforcement.
Guadalupe Bojorquez of Albuquerque was one of two voters who spoke out Thursday about a private investigator who questioned them about their relatives' right to vote.
Bojorquez said the man came to her mother's Albuquerque home uninvited Wednesday morning.
"He was questioning her status, saying that he needed to see her papers and documents to show that she was a U.S. citizen and was a legitimate voter," Bojorquez said. "He totally, totally scared the heck out of her."
Bojorquez declined to provide her mother's name, saying the older woman, who does not speak English and became a U.S. citizen earlier this year, was frightened by the ordeal.
Bojorquez said her mother called her at work and she spoke with the man by telephone while he was at her mother's house.

She said he identified himself by name and said he was a private investigator hired by an Albuquerque law firm where an attorney who has helped advise the GOP on voter fraud issues works.

The attorney, Pat Rogers, didn't return a phone call to his office Thursday, but he said last week the state GOP had hired a private investigator to look into suspected cases of voter fraud.

Bojorquez said her mother was one of 10 voters who had been registered by the Association of Community Organizations for Reform Now, or ACORN, and were identified by the Republican Party as being suspected fraudulent voters.

The granddaughter of another of the suspected fraudulent voters said she also was questioned by a private investigator Thursday.

Jenais Griego said the man approached her in her driveway and asked her questions about her grandmother, Emily Garcia. Garcia uses Griego's address as her mailing address, but doesn't live with her.

Griego said she invited the man inside and he asked her about Garcia's voter registration card, but she told him her grandmother had already voted.

"Then he got upset, he stood up right away and he looked angry," she said. "He kind of freaked me out when he got upset, but then he left."

The state Republican Party alleged last week that 28 people voted fraudulently in one Albuquerque state House district in the June Democratic primary after a review of 92 newly registered voters in House District 13.

ACORN leader Dana Gallegos charged the Republican Party is targeting minority voters on purpose.

"They thought they could smear these voters to convince Americans that minority voters are engaged in voter fraud and to suppress their vote," she said.

Both Griego and Bojorquez said they felt the private investigator was harassing their families.

Bojorquez said the visit affected her mother's outlook on voting.

"She said that if she knew she was going to have to go through all this, she wouldn't have voted," Bojorquez said.

The visit had the opposite affect on Griego.

"Nobody can scare me out of voting, nobody," she said. "It even makes me want to vote more."

Exhibit 9

Albuquerque Journal (New Mexico)

October 18, 2008 Saturday

Group Confirms Some Suspect Voters as Legitimate;
ACORN responds

**BYLINE:** Jeff Jones Journal Politics Writer

**SECTION:** CAMPAIGN 08; Pg. A4

**LENGTH:** 532 words

The New Mexico chapter of ACORN says it has disproved at least some of the Republican allegations about Bernalillo County voting fraud in this year's primary election.
State Republicans this week said their search of public records for 92 newly registered Albuquerque voters who cast ballots in the June primary uncovered "highly suspect" voter registrations on file in 28 of those cases. They called it "bombshell" evidence of voting fraud. The party provided names for 10 of the 28 suspect registrations and said five of those 10 were registrations submitted by ACORN.
An organizer for ACORN - the Association of Community Organizations for Reform Now, which handled some of those registrations - said Friday that it has since contacted four of the five voters as identified by the GOP as being registered by ACORN and confirmed that they are legitimate voters.
The advocacy group, which has come under fire in connection with its voter registration efforts across the county, was planning an Albuquerque news conference today with some of those voters.
"We tru ly just looked (them) up in the registry ... and found their phone numbers and called them, and lo and behold, real people answered," said Clayton Kennedy, the Albuquerque head organizer for ACORN. "They haven't proven anything here. If, truly, the Republican Party couldn't take 30 seconds to lift a phone, it's saying a lot about these claims."
State Rep. Justine Fox-Young, R-Albuquerque, said Friday she hopes that every ballot cast during the primary was legitimate, but added: "We presented evidence to indicate there were a significant number of highly suspicious and potentially fraudulent votes cast in the primary election, and I'll stand by that."
Fox-Young said the GOP's paperwork concerning the voters in question would be handed over to the 2nd Judicial District Attorney's Office, the FBI and the state Attorney General's Office.
What's next?
Here's what we know about voter registration concerns in New Mexico:

Bernalillo County Clerk Maggie Toulouse Oliver has about 1,500 suspicious registrations that have come into her office from a variety of places, including ACORN.

ACORN said it flagged its own problematic, duplicate and incomplete registrations before turning them in to county clerks. Republicans question whether far more of the group's registrations could be suspect. County clerks do their own verification of voter registrations before entering them into the voter database, and Toulouse Oliver said she believes it would be "extremely rare" for a fraudulent registration to get into that database.

Toulouse Oliver has said the FBI has spoken with her about the suspicious registrations, has copies of them and has requested additional information. "There is an investigation under way," 2nd Judicial District Attorney Kari Brandenburg told the Journal on Friday. "We are working in partnership with the U.S. Attorney's Office regarding these cases."

The 1,500 suspicious registration cards will not be entered into the voter database prior to the Nov. 4 election: Voters who say their information is in that stack will be given a provisional ballot, which would be subjected to subsequent review and verification.

# Exhibit 10

madison.com                                    http://www.madison.com/toolbox/index.php?action=printme2&ref=tct&st...

**madis⊛n.com**   Marketplace | Jobs | Autos | Homes | Rentals | Obits | Weather | Archives 

Thank you for using our printer friendly story page.

Return to story

# Van Hollen wants prosecutors to monitor state polls

The Capital Times
October 29, 2008

Democrats say state Attorney General J.B. Van Hollen's plan to send about 50 prosecutors to state polling places is a partisan attempt to intimidate voters.

Van Hollen, who recently lost a lawsuit to get the state Government Accountability Board to cross-check about 1 million voter registrations before the Nov. 4 election, has announced that the assistant district attorneys would be used to enforce voting laws.

Voters, he said, "have a right to vote in fair elections, untainted by election fraud."

Democratic Party of Wisconsin chairman Joe Wineke said Van Hollen, who is co-chair of the GOP's presidential election campaign in the state, is playing politics.

"This is nothing more than a shameless political stunt designed to appease Van Hollen's Republican Party bosses and manipulate the election in their favor by disenfranchising voters," he said.

Election monitoring threatens to be a contentious Election Day issue after Van Hollen's stinging loss in court and a recent call by Republicans to former military, police or firefighting personnel to monitor inner-city Milwaukee polling places.

Van Hollen filed a lawsuit -- backed by Republicans and opposed by Democrats -- in September in Dane County seeking that the court order the state's Government Accountability Board to cross-check voter registration information with Department of Transportation, death and felony records dating back to Jan. 1, 2006. That's when the federal Help America Vote Act went into effect.

The Government Accountability Board ordered the checks to be done for those who registered since Aug. 6 of this year, when the statewide voter registration database was up and running.

Dane County Judge Maryann Sumi ruled that Van Hollen had no standing to file the lawsuit because the Help American Vote Act is a federal matter, and that neither state nor federal law required voter registrations to be checked against other records.

Van Hollen has vowed to appeal.

Republicans had also asked that the court order voters' IDs to be checked in Milwaukee, where they assert widespread voter fraud exists after workers for Democratic-leaning groups were found to have falsified voter registration information.

Those groups, most notably the Association of Community Organizations for Reform Now, or ACORN, have said those workers were simply trying to get credit for voter registrations without doing the work.

Sumi said in her ruling that there was no evidence of criminal activity in those incidents.

## Return to story

**madison.com** is operated by Capital Newspapers, publishers of the Wisconsin State Journal, The Capital Times, Agri-View and Apartment Showcase. All contents Copyright ©2008, Capital Newspapers. All rights reserved.