UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> REPUBLICAN NATIONAL COMMITTEE, et al., <br><br> Defendants | Civil Action No. 81-3876 |

**THE REPUBLICAN NATIONAL COMMITTEE'S SUPPLEMENTAL MEMORANDUM
IN RESPONSE TO THE COURT'S NOVEMBER 2, 2016 ORDER**

On November 2, 2016, this Court instructed the Republican National Committee ("RNC") to use its best efforts to respond to the three declarations — on behalf of Ellyn Lindsay, Scott Forstall, and Michael Lieberman — submitted the evening of October 31 by the Democratic National Committee ("DNC").  Since then, late in the afternoon of November 2, the DNC filed three more declarations, on behalf of Melissa Alessi, Irasema Garza, and Helen Lauderdale.  The RNC has investigated the allegations in each of the six declarations.  This supplemental memorandum and the attached declarations demonstrate that the DNC and its declarants are mistaken about the RNC's involvement in poll watching activities.

More fundamentally, the DNC's latest declarations confirm that the DNC has not come forward with any competent evidence, much less clear and convincing evidence, of any violation of the Consent Decree.  It still has not identified any evidence, not even hearsay, of any single voter deterred from voting as a result of any RNC activities.  Instead, it continues to rely on what are best described as tabloid litigation tactics, raising insubstantial allegations that appear

1

designed only to generate headlines and to force the RNC to undertake burdensome discovery. Tellingly, while this case began with the DNC's unsupported theory that the RNC is collaborating with the Trump campaign's poll watching activities, its new declarations all but abandon that theory, relying instead on vague summaries of purported statements made by other poll watchers to DNC operatives. The DNC's motion should be denied.

### The RNC's Supplemental Declarations

In response to the Court's November 2 order, the RNC is now submitting five supplemental declarations on behalf of the following declarants:

- John R. Phillippe Jr., Chief Counsel, Republican National Committee (Exhibit M)

- Peter Graves, Regional Political Director, Republican National Committee (Exhibit N)

- Matt Pinnell, National State Party Director, Republican National Committee (Exhibit O)

- Robert ("Bobby") Talbot, Nevada State Director, Republican National Committee (Exhibit P)

- Holly Turner, Partner, Stampede Consulting, LLC (Exhibit Q)

### Response to the DNC's Supplemental Declarations

The RNC has investigated the allegations in the three DNC declarations submitted on October 31 and, in the time available, preliminarily investigated the allegations in the three DNC declarations submitted on November 2. *See generally* Phillippe 2d Supp. Decl. ¶¶ 9-17; Graves Decl. ¶ 5. Most of the declarants are California and Maryland residents, who aver to have traveled to Las Vegas as volunteer poll watchers for the DNC. Four of the six declarants are attorneys. All purport to report on conversations they had with other poll watchers. And all the reported conversations are hearsay and for the most part paraphrased and characterized by the

declarant rather than quoted directly.  The declarations are inaccurate in material respects and provide no basis for granting injunctive relief or holding the RNC in contempt.

*First*, none of the individuals named in the declarations serve in any capacity as an RNC member, employee, contractor, or volunteer.  *See* Phillippe 2d Supp. Decl. ¶¶ 9-17; Talbot Decl. ¶ 7; Graves Decl. ¶ 5.  There are only two individuals identified by their full name — Kishanna Holland and Onita Petersen.  Ms. Holland was hired by Stampede Consulting, LLC to serve as a poll observer.  *See* Turner Decl. ¶ 10.  Stampede is not working for the RNC in Nevada,[1] *see* Turner Decl. ¶ 7, and Ms. Holland was not hired and is not working on the RNC's behalf.  *See id.* ¶ 10; *see also* Phillippe 2d Supp. Decl. ¶¶ 14-15; Talbot Decl. ¶ 7.  Moreover, as the attached declarations explain, many of the details in the DNC's declarations are wrong.  For example, Ms. Holland does not appear to be a law student from New York.  *See* Phillippe 2d Supp. Decl. ¶ 16.  She also did not move temporarily to Las Vegas to observe the election.  *See id*.

After a diligent search using many variations of the name "Onita Petersen," neither the RNC nor Stampede has been able to find any information in their files or in the public domain.  *See* Phillippe 2d Supp. Decl. ¶ 13; Turner Decl. ¶ 13.  The RNC is highly confident that, whoever she might be, Onita Petersen is not an RNC member, employee, contractor, or volunteer.  *See* Phillippe 2d Supp. Decl. ¶¶ 12-13; Talbot Decl. ¶ 7; Graves Decl. ¶ 5.  If she is a

---

[1] The RNC has retained Stampede Consulting, LLC in connection with get-out-the-vote efforts only in certain districts in a different state.  *See* Phillipe 2d Supp. Decl. ¶ 15; *see also* 2009 Order ¶ 5 (permitting these activities).  The contract between the RNC and Stampede Consulting is expressly limited to those duties.  *See* Phillippe 2d Supp. Decl. ¶ 15; *see generally Bankers Trust Co. v. Bethlehem Steel Corp.*, 752 F.2d 874, 882 (3d Cir. 1985) (noting rule that principal is not liable for acts of agent outside scope of authority); *Pedro Realty Inc. v. Silva*, 399 So.2d 367, 369 (Fla. Ct. App. 1981) ("a principal is not liable for actions of its agents committed outside the scope of its employment and before one may infer that the principal ratified unauthorized acts of his agent, evidence must demonstrate that the principal was fully informed or that he approved of those acts").

poll watcher, she is working for one of several other entities involved in poll watching in Nevada.

The DNC's declarations identify three individuals by only their first names.  *See* Lieberman Decl.¶ 5 (referring to "Joanne"); Forstall Decl. ¶ 4 (referring to "Charlene"); Garza Decl. ¶ 3 (referring to "Brenda").  After due diligence, it appears that "Charlene" could refer to Charlene Stamps, who was hired by Stamped Consulting, LLC to perform poll-watching duties and, like Ms. Holland, has no connection to the RNC.  *See* Turner Decl. ¶¶ 11-12; *see also* Phillippe 2d Supp. Decl. ¶ 14; Talbot Decl. ¶ 7; Graves Decl. ¶ 5.  The RNC has not been able to confirm the identity of "Joanne."  The RNC also has not been able to confirm the identity of the "Brenda," but the DNC's declaration states that she works for the Trump campaign.

Because these individuals are not agents, servants, or employees of the RNC, they are not covered by the Consent Decree.  1982 Agreement ¶ 4.  As this Court previously concluded, both in 1990 and in 2008, the Consent Decree "applies only to the actions of the RNC" and not to actions taken by employees or agents for other committees or organizations.  *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 671 F. Supp. 2d 575, 581-82 & n.1 (D.N.J. 2009); *see also* 10/31/16 Tr. at 29 (noting that in both instances, Judge Debevoise "found that the RNC was not working in conjunction" with the state party committees and, "given that history in the case," questioning how the current situation could be any different).  That long-standing interpretation, drawn from the Consent Decree's plain wording and accepted by the Court and parties for thirty-four years, confirms that the RNC cannot be held accountable for the activities and conduct of individuals who are not acting on the RNC's instructions and behalf but are instead acting on the instructions and behalf of other organizations.  *See* Restatement (Second) of Contracts § 202(4) ("any course of performance accepted or acquiesced in without objection is given great weight in

the interpretation of [an] agreement"); *see also* Pinnell Decl. ¶¶ 4-5 (noting that State Party Chairs have long participated in election day activities, but the RNC has no involvement and the State Party Chairs do not act on behalf of the RNC in those activities).

***Second***, the activities described in the DNC's declarations do not violate the Consent Decree. The Consent Decree prohibits any "ballot security" activity, which is defined as "any program aimed at combating voter fraud by preventing potential voters from registering to vote or casting a ballot." 2009 Order ¶ 3 (listing illustrative examples). The Consent Decree expressly does *not* cover "normal poll-watch functions," 1987 Order ¶ A, which includes "stationing individuals at polling stations to observe the voting process and report irregularities unrelated to voter fraud …." 2009 Order ¶ 4. The Consent Decree expressly permits observers to "report any disturbance that they reasonably believe might deter eligible voters from casting their ballots, including malfunctioning voting machines, long lines, or understaffing polling places." *Id*. It also expressly permits, and does not apply to, programs "undertaken by the RNC, or by any state or local Republican entity with which it coordinates, to increase the number of individuals that cast a ballot in any election, including registering voters pursuant to applicable state statutes or encouraging voters to visit the polls ('get out the vote') …." *Id.* ¶ 5. The activities described in the DNC's declarations are normal poll-watch functions. The DNC has no evidence that any poll watcher engaged in any activity "aimed at combating voter fraud by preventing potential voters from registering to vote or casting a ballot." 2009 Order ¶ 3.[2]

---

[2] The Court's November 2 Order directs the RNC to "set forth all material terms of any such efforts, including any geographic areas which are being targeted for poll watching or poll observation and the reason(s) those areas are being targeted." It also defines poll watching broadly to include "counting of vote-by-mail/absentee ballots, and post-election canvassing." The RNC does not interpret the Court's Order to suggest that the Consent Decree prohibits such activities. *See* Phillippe 2d Supp. Decl. ¶¶ 4-7. To the extent it does, however, the RNC respectfully but strongly objects. That would represent a breathtaking expansion of the Consent

One DNC declaration asserts that "Onita Petersen" misinformed potential voters about the availability of paper ballots and the ability to vote at an early voting location. *See* Alessi Decl. ¶¶ 4-6. Even if true, and even if "Onita Petersen" were acting intentionally, which is not alleged, giving inaccurate information is not the sort of alleged intimidation or suppression that the Consent Decree was intended to address. But significantly, the DNC's declarations do not include sufficient information to be able to draw any firm conclusions as to what actually happened without speculating. The vague information contained in the declarations is filled with gaps and ambiguities, and is certainly not sufficient to connect the RNC to any of the alleged activities purportedly witnessed by the DNC's declarants.

***Third***, the statements offered by DNC declarants about what other poll observers purportedly told them cannot possibly be sufficient to satisfy the DNC's burden for obtaining injunctive relief and holding the RNC in contempt. To begin, the declarations are hearsay, purporting to paraphrase conversations with persons, many of whom cannot be identified, for the critical facts on which the injunction would be based. Putting aside that the RNC has methodically rebutted the DNC's claims, that is not the quality of evidence that would constitute a "clear showing" sufficient to justify the "extraordinary remedy" of a preliminary injunction, which "should only be granted in extraordinary circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2016) (citation omitted); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Moreover, because "substantial compliance" is a defense to civil contempt, the burden is on the DNC to prove with "clear and convincing"

---

Decree, which was carefully drafted *not* to cover poll watching activities and does not address vote counting or post-election canvassing. Out of an abundance of caution, the RNC has avoided poll watching activities, *see* Phillippe 2d Supp. Decl. ¶ 5, Graves Decl. ¶ 5, Talbot Decl. ¶ 7, but the RNC emphasizes that those activities are permitted under the Consent Decree and preserves its objection to any expansion of the Consent Decree's requirements.

evidence a violation *by the RNC* — and not merely an inadvertent or technical violation by someone with some alleged connection to the RNC.  *See, e.g., Post Drivers Fed'n 18, Inc. v. All Saints*, 757 F. Supp. 2d 463, 466 (D.N.J. 2011); *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*, No. CIV. A 97-7430, 2001 WL 521761, at *4 (E.D. Pa. May 10, 2001); *see also Patterson v. Newspaper & Mail Deliveries Union of N.Y. & Vicinity*, 13 F.3d 33, 39 (2d Cir. 1993) (once "dominant objective" of consent decree "has been reached," it should be terminated, even if decree provides enforcement mechanisms for redressing ongoing discrimination that would be "more expeditious than the initiation of new litigation").  Any questions or ambiguities concerning either what the Consent Decree requires, or what alleged conduct has in fact occurred, must be resolved in the RNC's favor, for civil contempt is a "severe remedy, and should not be resorted to where there is fair ground of doubt."  *California Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885).

In light of these demanding standards, it again bears emphasis that the DNC has come forward with no evidence of voter intimidation or suppression attributable to the RNC, and that is what the Consent Decree is, by its terms, intended to prevent.  Although the injunction issued by Judge Debevoise on Election Eve 2004 was ultimately stayed by the en banc Third Circuit, and then vacated as moot, the injunction was based on allegations that the RNC was *directly* involved in a *voter challenge program* in Ohio affecting *30,000* voters.  No allegation in the current record even approaches that severity.  Even if the RNC were involved in minor instances of "normal poll watching" in Las Vegas (and the evidence shows it is not), that would neither violate the Consent Decree nor would it pose a sufficient threat of injury or implicate the public interest sufficient to justify the extraordinary relief of a preliminary injunction.

7

\* \* \* \*

The balance of evidence in this case is not close. It is impossible to prove a negative, but the RNC has gone to great lengths to respond to the DNC's shifting allegations. At every step, the RNC has supplied documentary evidence and declarations of individuals with first-hand knowledge of the RNC's extensive compliance efforts and its political operations. In contrast, the DNC's evidence consists of press reports of ambiguous, later-retracted statements; tweets from individuals unrelated to the RNC; claimed concerns about activities by state party officials that are permitted under the Consent Decree (and have long been understood to be permitted); and now vague descriptions of purported statements made by individuals working for and acting on behalf of other organizations. That is hardly the clear and convincing showing required for the extraordinary and severe remedies of contempt and injunctive relief. And the fact that the DNC has had months to investigate its original allegations — with nothing to show for it — only confirms that its motion lacks merit. The public interest does not support judicial intervention in an election absent the clearest of evidence. And there is no reason not to hold the DNC to the same standards of proof demanded of other litigants. The DNC's motion should be denied.

          Respectfully submitted,

          <u>Mark. D. Sheridan</u>
          Bobby R. Burchfield
          Matthew M. Leland
          KING & SPALDING LLP
          1700 Pennsylvania Ave, N.W., Suite 200
          Washington, D.C.  20006
          Telephone: (202) 626-5524
          Email: bburchfield@kslaw.com

          Mark D. Sheridan
          SQUIRE PATTON BOGGS (US) LLP
          The Legal Center
          One Riverfront Plaza
          1037 Raymond Blvd.
          Newark, New Jersey  07102
          Telephone: (973) 848-5681
          Email: mark.sheridan@squirepb.com
          *Counsel for the Republican National Committee*

Dated:  November 3, 2016

## CERTIFICATE OF SERVICE

      I hereby certify that this brief filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent by United States Mail to those indicated as non-registered participants, on November 3, 2016.

                                        /s/ Mark. D. Sheridan
                                        Mark D. Sheridan