**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

DEMOCRATIC NATIONAL COMMITTEE, *et al.*

Plaintiffs,

v.

REPUBLICAN NATIONAL COMMITTEE, *et al.*

Defendants.

Civil Action No.: 81-3876 (JMV)(JBC)

**MEMORANDUM IN FURTHER SUPPORT OF ORDER TO SHOW CAUSE WHY DEFENDANT REPUBLICAN NATIONAL COMMITTEE SHOULD NOT BE HELD IN CIVIL CONTEMPT AND FOR THE ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF**

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
(973) 533-0777

**PERKINS COIE LLP**
700 13th Street, NW
Washington, DC 20005
(202) 654-6200

*Attorneys for Plaintiff, Democratic National Committee*

*Of Counsel and On the Brief:*
Angelo J. Genova, Esq.
Marc E. Elias, Esq. (*pro hac vice*)
Rajiv D. Parikh, Esq.
Joshua L. Kaul, Esq. (*pro hac vice)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 1

I. An Injunction Should Issue Because the DNC Is Likely to Succeed on the Merits ............ 1

A. The RNC Is Directly Involved in Ballot Security Efforts Prohibited by the Consent Decree ........................................................................................................ 2

B. The RNC's Agents and Those With Whom It Is Acting in Concert Directly or Indirectly Are Involved in Ballot Security Efforts Prohibited by the Consent Decree. ........................................................................................................ 5

II. The Remaining Factors Strongly Favor an Injunction. ..................................................... 10

CONCLUSION ........................................................................................................... 12

**TABLE OF AUTHORITIES**

**CASES**

*Asseo v. Pan Am. Grain Co.*,
805 F.2d 23 (1st Cir. 1986) .......... 3

*Council of Alternative Political Parties v. Hooks*,
121 F.3d 876 (3d Cir. 1997) .......... 10

*Democratic Nat'l Comm. v. Republican Nat'l Comm.*,
673 F.3d 19 (3d. Cir. 2012) .......... 1, 6, 8, 9

*Harris v. Graddick*,
593 F. Supp. 128 (M.D. Ala. 1984) .......... 11

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
736 F.3d 1239 (9th Cir. 2013) .......... 3

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*,
51 F.3d 982 (11th Cir. 1995) .......... 3

*Mercy Catholic Med. Ctr. v. Thompson*,
380 F.3d 142 (3d Cir. 2004) .......... 7

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer*,
290 F.3d 578 (3d Cir. 2002) .......... 10

*Trustees of Am. Fed'n of Musicians & Employers' Pension Fund v. Steven Scott Enterprises, Inc.*,
40 F. Supp. 2d 503 (S.D.N.Y. 1999) .......... 7

*United States v. Berks Cty.*,
250 F. Supp. 2d 525 (E.D. Pa. 2003) .......... 10

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) .......... 3

## INTRODUCTION

Facing clear evidence of Consent Decree violations based on the widespread and racially tinged "ballot security" measures planned by Republicans across the country for the upcoming election, the RNC: (1) attempts to walk back from clear statements of senior Republican officials confirming that the RNC is engaged in ballot security efforts forbidden by the Consent Decree, and (2) claims that the RNC has no legal responsibility for, or connection whatsoever to the undisputed ballot security efforts of the Trump campaign, Republican state party entities, or even *individuals who understand themselves to be working for the RNC.* Yet, even without the benefit of document discovery or depositions, the evidence shows that Plaintiffs are likely to succeed in establishing that "agents, servants, [or] employees" of the RNC, "'acting directly or indirectly through other party committees,'" have participated in ballot security efforts and thus the RNC is in violation of the Consent Decree. *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 197 n.2 (3d. Cir. 2012) (quoting 1982 Consent Decree).

The balance of the equities weighs decisively in favor of a preliminary injunction. On the one hand, the fundamental right to vote is at stake; on the other, the narrow injunctive relief requested by the DNC only modestly adds to obligations that the RNC already has pursuant to the Consent Decree. Accordingly, the Court should grant the requested preliminary relief.

## ARGUMENT

### I. An Injunction Should Issue Because the DNC Is Likely to Succeed on the Merits

The Consent Decree plainly covers the ballot security measures that the Trump Campaign and various Republican state party entities admittedly intend to undertake on (and leading up to) Election Day – including, but not limited to, "the use of challengers to confront potential voters and verify their eligibility at the polls on either Election Day or a day on which they may take advantage of state early voting procedures" and the targeting of districts for scrutiny based on

racial or ethnic composition. *See* DNC Mem. at 14-15. The RNC does not dispute that such activities are covered; nor does it dispute that the Trump Campaign and/or state parties intend to so act. Rather, the RNC now – in a remarkable claim of "mistake" – denies any connection to these activities, despite the clear, public statements of senior Republican officials about the RNC's role. This is a failed attempt to minimize the strong evidence of RNC involvement in ballot security directly, through RNC agents, and indirectly through those with whom the RNC acts in concert and materially supports. The requested injunction should issue because Plaintiff is likely to succeed on the merits of its claim that the RNC has violated the Consent Decree.

**A. The RNC Is Directly Involved in Ballot Security Efforts Prohibited by the Consent Decree**

The DNC is likely to establish that the RNC is directly engaged in ballot security efforts in violation of the Consent Decree. To begin with, the declarations filed with the Court show that *five* separate poll watchers in Nevada have represented themselves as working, directly or indirectly, for the RNC. *See* Lindsay Decl. ¶¶ 5-6 (Kishanna Holland); Lieberman Decl. ¶ 4 (same); Forstall Decl. ¶ 3 (Onita Peterson); *id.* ¶ 4 ("Charlene"); Lieberman Decl. ¶ 5 ("Joanne"); Irasema Decl. ¶ 3 ("Brenda" said she was "with the Trump Campaign, but it's the RNC who is really running this program").

In the November 3 telephone conference with the Court, counsel for the RNC stated that two of these five individuals—Kishanna Holland and "Charlene"—are working for Stampede Consulting, not the RNC. Counsel acknowledged, however, that Stampede is a *contractor* for the RNC. Indeed, an FEC filing that includes the name of Donald Trump, the candidate supported by the expenditure shows that just a few weeks ago, the RNC paid Stampede *$1.3 million* for "GOTV consulting." Supplemental Certification of Angelo J. Genova, Esq. at Ex. 1 ("Genova Supp. Cert."). Because as RNC appears to concede, the Consent Decree applies to contractors of

the RNC, the Stampede activities alone established a Consent Decree violation. *See* DNC Mem. at 2 (Consent Decree applies to actions by the RNC directly, indirectly, or through its agents or employees); RNC Mem. at 11 ("All staff recipients, employees, *contractors*, and volunteers were directed that they 'must strictly avoid participation in any planning meeting, recruitment efforts, and other activities related to [election day operations] and/or the prevention of voter fraud." (emphasis added)).

Moreover, Governor Pence and Kellyanne Conway—two of the most senior members of the Trump Campaign—both have stated publicly that the Trump Campaign and the RNC are working together to combat purported voter fraud.[1] Neither statement can be minimized as a mere slip of the tongue, as each was clear and authoritative. *See* DNC Mem. at 1-2 (Governor Pence, stating that "the Trump campaign and the Republican National Committee are working very closely with state governments and secretaries of states all over the country to ensure ballot integrity"); DNC Mem. at 16 (Conway, stating that the Trump campaign was "actively working with the national committee, the official party, and campaign lawyers to monitor precincts around the country").[2]

---

[1] The RNC tries to minimize Pence and Conway's troubling statements as "news accounts containing inadmissible double and even triple hearsay." RNC Mem. At 1. But the Court can take judicial notice of the public statements of prominent officials or candidates; and, in any event, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'") (quoting *Asseo v. Pan Am. Grain Co*., 805 F.2d 23, 26 (1st Cir. 1986)); *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 n. 5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings.").

[2] In its original response brief, the RNC suggested that Governor Pence's statement might not have been related to ballot security. RNC Mem. At 21. That suggestion is unfounded, and ignores that

The Chief Counsel for the RNC has now submitted a declaration relaying conversations that he had with Governor Pence and Conway, claiming that their statements were "mistaken." Nov. 2, 2016 Phillippe Decl. ¶¶ 12-16. It would be remarkable, however, for Governor Pence and Conway *both* to have made the same mistaken point. Notably, neither of them has made a sworn statement in this case—in marked contrast to Robert Gleason and Ronna Romney McDaniel. Moreover, the Chief Counsel's statements regarding Governor Pence provide no explanation as to why Pence made his original statement and do not state that Governor Pence views his remark as "mistaken." Nor has the RNC provided a sworn statement from the RNC representative who is most likely to have made an agreement with the leadership of the Trump Campaign: RNC Chairman Reince Priebus.

That Governor Pence and Conway's statements cannot so easily be brushed aside is further supported by evidence that has recently come to light showing that a *third* individual has now "mistakenly" implicated the RNC in efforts prohibited by the Consent Decree, further indicating the RNC's involvement and obfuscation. In particular, on November 1, 2016, Chris Marston, the Election Day Operations Chair and General Counsel for the Republican Party of Virginia, let slip a reference on a poll-watcher training call to "the folks RNC has hired on … to help them with …." Genova Supp. Cert. at Ex. 2. Marston then stopped and said, through nervous laughter, "I'm sorry. (nervous laughter) The RNC is not doing anything related to Election Day operations." *See* Declaration of Frank Anderson at Ex. E; *see also* Genova Supp. Cert. at Ex. 2.

Taken together, five poll watchers, two of the most senior members of the Trump Campaign, and a senior official in the Virginia Republican Party have indicated that the RNC is

---

the question that prompted Governor Pence's statement concerned "how is the Trump-Pence campaign going to . . . prevent" Hillary Clinton from "steal[ing] this election." DNC Mem. at 11.

involved in ballot security efforts. And the RNC recently paid well over a million dollars to a company that it acknowledges contracted with two of the five poll watchers. Based on this evidence, the most likely conclusion is that the statements described above about RNC involvement were made *because they are true*, and that the RNC is violating the Consent Decree through its own direct actions and those of its contractors.

**B. The RNC's Agents and Those With Whom It Is Acting in Concert Directly or Indirectly Are Involved in Ballot Security Efforts Prohibited by the Consent Decree.**

The DNC is also likely to succeed in establishing a violation of the Consent Decree based on the actions of those with whom the RNC is acting in concert, including its agents. These include the Trump Campaign, and RNC Members who are also state party officials.

**Trump Campaign**. As set forth in the DNC's opening brief, the RNC and the Trump Campaign have tied themselves so closely together that there should be a presumption that the RNC is involved in the Trump Campaign's undisputed ballot security efforts. *See* DNC Mem. at 11-16 (describing how the "RNC has commingled its staff and resources with the Trump campaign in a manner that makes it impossible to separate one's allocated resources from the other's in the field"). Even if such a presumption were not ordinarily warranted, *cf.* RNC Mem. at 19-20, it is warranted on the facts here, particularly in light of the consistent and repeated public comments by senior Republicans that the Trump Campaign is working with the RNC on ballot security. Indeed, an article published just yesterday pointed out that RNC officials have "boasted of how interconnected the campaign and the RNC have become—the RNC is essentially running Trump's ground game and supplying him with most of his voter data—and they operate a joint fundraising committee that enables them to apportion resources." Kyle Cheney, *Pence: We're not working with RNC to monitor polls*, Politico, Nov. 2, 2016 (Genova Supp. Cert. at Ex. 3). "Last week, when the RNC convened a members-only conference call that included Chairman Reince Priebus and

Conway, Priebus said the RNC was working as 'one team' with the Trump campaign, according to multiple participants in the call. And Conway described the relationship as 'airtight.'" *Id.*

Given its touting of its closeness with the Trump campaign—and its repeated statements to its supporters and the public that its efforts for the 2016 election are being undertaken jointly with the Trump Campaign—the RNC cannot simply wash its hands of the Trump Campaign's ballot security efforts and repeated calls for poll monitoring in "certain communities." Notably, the RNC does not dispute the existence of the Trump Campaign's ballot security efforts. Moreover, the RNC's public response to such calls has not been to disavow them, but to *defend* them: On October 23, 2016, Chairman Priebus asserted on Face the Nation that voter fraud "is real" and that what Trump is doing is "trying to also tell his folks to watch out for this fraud that might occur." DNC Mem. at 10.

The RNC's main response is to claim that it cannot be held accountable for the activities of the Trump Campaign because Trump is not an agent of the RNC.[3] This is incorrect: the evidence shows that Trump and his campaign are agents and servants of the RNC with respect to ballot security. The Consent Decree applies to "agents, servants, [or] employees" of the RNC, "'acting directly or indirectly through other party committees,'" *Democratic Nat'l Comm.*, 673 F.3d at 197 n.2 (quoting Decree). An agency relationship can be shown by actual authority, and the evidence here supports that. As the DNC has shown, "[t]he RNC has commingled its staff and resources with the Trump campaign in a manner that makes it impossible to separate one's allocated resources from the other's in the field." DNC Mem. at 12. But agency also can be shown

[3] The RNC incorrectly argues that the DNC did not initially argue that Trump was an agent of the RNC for purposes of the Consent Decree violations. RNC Mem. at 17. The DNC did argue in opening that the RNC should be held accountable for its own actions and those of its agents. *See* DNC Mem. at 5, 12-13.

by "apparent authority" and "authority by estoppel". *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 161 (3d Cir. 2004) ("An agency relationship may be established by: (1) express authority; (2) implied authority, to do all that is proper, usual and necessary for the authority actually granted; (3) apparent authority, as where the principal holds one out as agent by words or conduct; and (4) agency by estoppel"). Both of these doctrines apply here, where until the DNC filed its motion the RNC was publicly embracing the Trump ballot security efforts. Because the Trump Campaign's efforts in the field are, practically speaking, inseparable from the RNC's, and because the RNC and Trump Campaign held their efforts out as such, the RNC's attempts on paper to disavow this clear overlap fall flat.[4] The facts and circumstances thus support the existence of an agency relationship between the RNC and Trump Campaign.

**<u>State Party Chairs.</u>** The RNC also has violated the Consent Decree based on the actions of its member-agents, who also happen to be state party chairs, including Gleason and McDaniel. The Consent Decree, while not applicable to state Republican parties simply by virtue of their relationship to the RNC, *cf.* RNC Mem. at 22 (citing Consent Decree), *is* applicable to RNC agents, *even if* those agents happen to be affiliated with state parties and act through those parties. *See*

---

[4] The RNC's silence (until Plaintiff filed this motion, at least) regarding the many public statements connecting it to the ballot security measures at issue "may be construed as an affirmation of [their members] exercise of apparent authority." *Trustees of Am. Fed'n of Musicians & Employers' Pension Fund v. Steven Scott Enterprises, Inc.*, 40 F. Supp. 2d 503, 511 (S.D.N.Y. 1999) (quoting *Scientific Holding Co. v. Plessey Inc.*, 510 F.2d 15 (2d Cir.1974)). "A principal is estopped from denying the apparent authority of its agent when it remains 'silent when he had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon, and that action would be taken or omitted which his statement of truth would prevent . . . .'" *Id.*; *see also* Richard A. Lord, 12 Williston on Contracts § 35:22 (4th ed. 2003) ("Where an agent lacks actual authority to agree on behalf of the principal, the principal may still be bound if the principal acquiesces in the agent's action, or fails to promptly disavow the unauthorized conduct after acquiring knowledge of the material facts."); *United States v. One 1973 Rolls Royce*, 43 F.3d 794, 818 n. 26 (3d Cir. 1994) ("The concept of ratification in agency law, for example, allows a principal to be bound by an agent's unauthorized prior act if the principal knows about it and fails to take affirmative steps to disavow the act.")

*Democratic Nat'l Comm.*, 673 F.3d at 197 n.2 (recognizing that the Decree applies to "agents, servants, [or] employees" of the RNC, "'*acting directly or indirectly through other party committees*'" (emphasis added) (quoting Decree)). Put another way, the Consent Decree does not allow RNC agents to violate the Consent Decree by acting to advance RNC interests but at the same time claiming that they are instead acting only in their state party capacity. This would be a massive loophole in the Consent Decree: one that does not exist and that Judge Debevoise and the parties never intended. Where, as here, an RNC member-agent violates the Consent Decree, the RNC is responsible for that violation – even if the agent also happens to be the head of a state party.

The violations in this case are clear. To begin with, at least two-member agents of the RNC have submitted declarations in the litigation *confirming* (or, at least, not denying) their involvement in ballot security measures in their states. *See* McDaniel Decl. ¶ 3; Gleason Decl. ¶¶ 5-6. These are not rogue state party chairs; they are RNC members in good standing who are doing precisely what the Republican Presidential candidate and the RNC chair have indicated is appropriate to further the goals of the Republican Party and its Presidential candidate. Their public statements make clear, notwithstanding any "disavowal" of RNC agency, that they were acting to advance the RNC's goals – either with express authority, apparent agency, or agency by estoppel. *See Mercy Catholic Med. Ctr., 380 F.3d. at 161*.

Specifically, RNC member and Pennsylvania Republican Party Chair Rob Gleason stated that he was "glad to hear" that Trump had directed his supporters to "[g]o down to certain areas [in Pennsylvania] and watch and study" the voters there, and his ensuing actions, DNC Mem. at 13, are consistent with and further the goals of the RNC. Likewise, RNC member and Michigan GOP Chair Ronna Romney McDaniel's announcement of a "massive statewide anti-voter fraud

effort" to prevent Hillary Clinton from "stealing" the election from Donald Trump, *id.* at 14, was consistent with and furthers the goals of the RNC. Because Gleason and McDaniel are "agents, servants, [or] employees" of the RNC, who were "'acting directly or indirectly through other party committees,'" *Democratic Nat'l Comm.*, 673 F.3d at 197 n.2 (quoting 1982 Consent Decree), their violations of the Consent Decree are attributable to the RNC.

The RNC's main defense to these acts of its member-agents in violation of the Consent Decree is to claim that Gleason and McDaniel's status as state party chairs means they could not have been acting as RNC agents. Not only is this contrary to the letter and intent of the Consent Decree, as explained above, but the RNC's own statements undermine this defense. As the RNC Counsel's Office explained in a September 22, 2016 memorandum to RNC political staff and independent contractors, in reasoning that applies equally to other RNC agents such as its members: "you cannot take off your RNC 'hat' and partake in activities prohibited by the Consent Decree by serving in some other capacity or during your non-working hours. You are covered 24 hours a day and 7 days a week until your engagement with the RNC is complete." *See* RNC Ex. A-10 at 1 of 5. Yet the RNC now argues that Gleason and McDaniel can do precisely that. Moreover, the RNC General Counsel expressly advised state party heads like Gleason and McDaniel *not* to engage in ballot security measures for fear of having those measures attributed to the RNC. *See* McDaniel Decl. Ex. A ("Given the seriousness of the Consent Decree and the severe consequences of a violation, you are encouraged not to engage in 'ballot security' activities even in your personal, state party, or campaign capacity."). Gleason and McDaniel plainly disregarded this guidance. Although the RNC now claims this advice was in an abundance of caution, it actually was necessary to ensure compliance with the Consent Decree for its member-agents such

as Gleason and McDaniel, because their actions are attributable to the RNC, and thus violated the Consent Decree.

**II. The Remaining Factors Strongly Favor an Injunction.**

In addition to Plaintiff's likelihood of success, all of the equitable factors weigh in favor of granting the preliminary injunction sought by Plaintiff.

With respect to irreparable harm, the violations of the Consent Decree at issue – and the ongoing ballot security measures planned through election day – threaten to impair voting rights across the country, particularly of Democratic and minority voters. Preliminary injunctive relief is appropriate to prevent the irreparable harm caused by an impairment of the right to vote. *See Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997); *United States v. Berks Cty.*, 250 F. Supp. 2d 525, 541 (E.D. Pa. 2003) ("The impact of the discouragement of equal participation in the democratic system cannot be redressed by money, or any other remedy, following trial.").

With respect to the balance of the equities, the Court must weigh the "potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer*, 290 F.3d 578, 596 (3d Cir. 2002). As should be clear, the potential harm to Plaintiff and those it represents – the denial or impairment of the franchise – is grave and real. On the other hand, an injunction will cause little if any cognizable harm to the RNC, which has no legal right to engage in conduct prohibited by the Consent Decree. The injunction will simply ensure that the RNC and its agents are complying with that Decree. Moreover, to the extent the ballot security actions of RNC and its agents are motivated by claims of harm from voter fraud, those harms have not been substantiated, and, in any case, can be addressed by ballot security activities that are completely disconnected from the RNC – just as the Consent Decree contemplates.

Finally, the public interest weighs heavily in favor of granting an injunction to ensure compliance with the Consent Decree and, accordingly, the right to vote free of intimidation or other improper interference. "In cases such as the present one, where the continued presence of [barriers to equal participation in the political process] is strongly evident, the public interest commands all appropriate relief necessary to effect the immediate and complete removal" of those barriers. *Harris v. Graddick*, 593 F. Supp. 128 (M.D. Ala. 1984).

## CONCLUSION

The RNC is legally responsible for the undisputed ballot security plans of the Trump Campaign and its member-agents who are operating through Republican state parties.  These activities are contrary to the Consent Decree and threaten the right to vote nationwide.  Accordingly, the Court should (1) preliminarily enjoin Defendants and their agents from engaging in voter intimidation and other forms of "ballot security" measures in concert with the Trump campaign and its associates, and (2) require the RNC to abide by the limitations set forth at pages 18-19 of the DNC's opening brief.  The Court also should issue an order extending the Consent Decree for another eight years, according to the terms of the Decree.

Respectfully submitted,

/s/ Angelo J. Genova
Angelo J. Genova
Rajiv D. Parikh
**GENOVA BURNS LLC**
494 Broad Street
Newark, NJ 07102
(973) 533-0777
agenova@genovaburns.com
rparikh@genovaburns.com

Marc E. Elias
**PERKINS COIE LLP**
13th Street, NW, Suite 600
Washington, DC 20005
melias@perkinscoie.com

Joshua L. Kaul
**PERKINS COIE LLP**
1 East Main Street, Suite 201
Madison, Wisconsin 53703
jkaul@perkinscoie.com

*Attorneys for Plaintiff,*
*Democratic National Committee*

Dated:  November 3, 2016

1856/006/13784186v1