UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DEMOCRATIC NATIONAL COMMITTEE, *et al.*

Plaintiffs,

v.

REPUBLICAN NATIONAL COMMITTEE, *et al.*

Defendants.

Civil Action No.: 81-3876

Judge John Michael Vazquez

SECOND SUPPLEMENTAL DECLARATION
OF JOHN R. PHILLIPPE JR.

I, John R. Phillippe Jr., state the following based on my personal knowledge:

1. I am over 18 years of age and competent to make this Declaration.

2. I am the Chief Counsel of the Republican National Committee ("RNC"), and have served in this position since July 2009. I am responsible for managing the RNC Counsel's Office and all of the RNC's day-to-day legal affairs, including ensuring the organization's compliance with the Consent Decree.

3. I reviewed the Court's Order dated November 2, 2016 (Dkt. #118) in the above captioned case requiring the Republican National Committee ("RNC") to identify and explain its poll watching or poll observation efforts – if any – in the 2016 Presidential Election.

**Poll Watching and Poll Observation**

4. I have engaged in extensive due diligence regarding any possible RNC involvement in poll watching and poll observation activities since the DNC filed its motion to show cause on October 26, 2016. These efforts are described in detail in

my Declarations dated October 31, 2016, and November 2, 2016. As a result of my due diligence, I have confirmed that, except as qualified in the following paragraph, the RNC has not engaged, is not engaging, and has absolutely no plans to engage in poll watching or poll observation this election cycle, anywhere in the country.

5. The Court's Order defines "poll watching" and "poll observation" to include "the counting of vote-by-mail/absentee ballots, and post-election canvassing when there may be disputes about counting the ballots of particular individuals." In light of the fact that these activities occur *after* the voters have cast their ballots, in my view this definition is broader than the activities covered by the Consent Decree, which focuses on activities leading up to and on Election Day. *See* Consent Decree (12/01/09 Am.) §§ 3-4. The RNC does not interpret, and has never interpreted, the Consent Decree to prevent observing the counting of votes during such proceedings as the post-election canvass, or other meetings at which local election officials may make determinations regarding or count outstanding provisional or absentee ballots. Nonetheless, I have advised RNC personnel that they must not take part in any effort to keep any particular identifiable voter's ballot from being counted, and I am confident from my due diligence that the RNC has not been, is not, and will not be, engaged in any such effort this year.

6. The RNC often participates in post-Election Day activities, which by definition do *not* deter votes. For example, in previous election cycles the RNC has expressly authorized its field staff to contact and assist voters who voted by provisional ballot and who may need to take additional steps with local election

2

November 3, 2016
Page 3 of 8

officials – such as providing proof of identification at a post-election meeting – to ensure their ballots are counted. Similarly, some states give a voter the opportunity after an election to "cure" absentee ballot deficiencies, such as when a signature on the voter's ballot affidavit does not match that on file in the voter registration records. Both of these examples could require an RNC staff member to attend, and even participate in, a meeting where there may be disputes concerning the counting of ballots – or, more likely, to recruit and organize volunteers to do so. RNC staff members routinely have been authorized to partake in these meetings, so long as they are only advocating that ballots should be counted or monitoring the conduct of the administrative proceedings. Thus, as I understand the definitions in the Court's Order, based on my due diligence, I am confident in the lack of any RNC involvement in "poll watching" or "poll observation" this election cycle. To the extent the definitions of these terms may include activities at canvasses or similar proceedings where ballot-counting or disputes about counting any particular individuals' ballots may occur, the RNC has been involved in such activities in the past and I fully anticipate participation in such activities this year, provided, however, that such activities have not and will not involve challenges to the counting of any particular identifiable voter's vote. Public disclosure of our plans in this area would reveal the RNC's post-election plans and strategies to the DNC – the RNC's competitive rival – and place the RNC at a substantial competitive disadvantage should a recount or contest arise in 2016. In response to the Court's Order, I am confident that the RNC has provided no training materials with respect

to these efforts and has not targeted any geographic areas other than states and districts with competitive elections. Any training materials or geographic targeting in the future would only relate to activities that I believe are not prohibited under the Consent Decree.

7. In order to confirm these points, as I have previously declared, I have spoken with the RNC employees and contractors who would be likely to have knowledge of these activities if they were in fact occurring. I also have personally spoken with representatives from Donald J. Trump's presidential campaign (Donald J. Trump for President, Inc.), including vice presidential nominee Governor Mike Pence, campaign manager Kellyanne Conway, and general counsel Don McGahn. In addition, I directed searches of RNC files for potentially relevant documents covering a range of matters – specifically contracts and, given that post-election activities fall substantially within the purview of the counsel's office, counsel's office materials.

8. In sum, as described above, I have found no evidence that the RNC is involved in poll watching or poll observation during this election.

**Nevada Poll Watchers**

9. I reviewed the six Declarations filed with the Court by the DNC on October 31, 2016, and November 2, 2016. Notably, all the declarations relate to activities in Nevada – and in one particular area in the state. And what particularly stood out to me was that the DNC has so many experienced attorneys – including a former Assistant U.S. Attorney and former judge – apparently from all

over the United States – concentrated in one region of Nevada collecting information about poll observers. Based on the Declarations filed with the Court, it appears to me that these Declarants are aware of the Consent Decree and appear to be questioning other poll workers in an effort to associate them with the RNC.

10. After receiving the Declarations, I reconfirmed with our Regional Political Director with responsibility for Nevada, Peter Graves, as well as our Nevada State Director, Bobby Talbot, that the RNC has no poll watching operation in Nevada at all, and plans no such operations in Nevada, or anywhere else in Peter's region.

11. In addition, my colleagues in the RNC Counsel's Office investigated whether the RNC has employed any of these individuals or has any record of contacts with them.

12. We electronically searched the RNC's emails, reviewed personnel files and documentation, and researched payroll records for the names "Kishanna Holland," "Kishana Holland," "Charlene Stamps," and "Onita Petersen" (and potential derivations, "Onita Peterson", "Anita Petersen," and "Anita Peterson"). We found no record of any employment, contact, or communication with or from individuals with any of these names. As discussed below, the individuals listed in the DNC's declarations by first name only were unfeasible to search.

13. We also asked our Research division to conduct a Lexis/Nexis search for "Onita Petersen," as that is the way in which the name is spelled in each of the DNC's declarations mentioning that person, but we found no record of anyone living

5

in the United States with that name. We also searched our extensive national voter file and did not find any record of such an individual.

14. In the course of our investigation, my staff in the Counsel's Office was able to locate and identify two of the individuals. My staff spoke to counsel for Stampede Consulting, LLC, who confirmed that the two individuals identified in the DNC's Declarations as Kishana Holland and "Charlene" (believed to be Charlene Stamps), had contracted with Stampede to perform poll observing activities in Nevada.

15. The RNC has not contracted with Stampede Consulting, LLC to perform any work in Nevada this election cycle. To the contrary, the RNC has an agreement with Stampede under which the scope of work is limited exclusively to get-out-the-vote activities in certain districts in a different state in a different region of the country. The RNC's contract with Stampede expressly limits Stampede's authority to those duties. Stampede performs no services whatsoever on behalf of the RNC in Nevada.

16. In addition, we have researched Ms. Holland on the internet. A website that appears to be hers (http://www.kishanaholland.net/) indicates that she is a fashion entrepreneur, brand and public relations consultant, and media personality who grew up in Brooklyn and later worked on Wall Street, and has been a resident of Nevada since at least 2014. The website does not suggest, however, that she is, or ever was, "a law student from New York [who] would be staying in Las Vegas

until November 10," as claimed in the Declaration of Ellyn Lindsay. *See* printouts from Ms. Holland's web page attached as Exhibit A.

17. In my experience, it is not uncommon for individuals who volunteer for or interact with a political organization to be confused about which organization they are volunteering for or interacting with. With a plethora of organizations including local, district, state and national party committees; Republican organizations not affiliated with any party committees; and campaign committees; to say nothing of independent organizations such as Super PACs, such confusion is understandable. While I have serious doubts about the credibility of information contained in the declarations offered by the DNC, to the extent any individual identified may have thought they were volunteering or working for the RNC, such a mistake would not be surprising to me, but I am confident tit would in fact be a mistake.

\* \* \* \*

18. In sum, in the time available, I and my staff pursued every feasible avenue we could think of to determine if the RNC is involved in any poll watching activity whatsoever as alleged by the DNC and claimed by the Declarations. After this expedited but extensive investigation, I am every bit as confident now as I was at the outset of this case that the RNC has not been, and is not, engaged in or planning to engage in poll watching, even though normal poll watching activity is permitted under the Consent Decree.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true.

Executed on November 3, 2016.

_____
John R. Phillippe Jr.

# EXHIBIT A

Home (./)     Meet Kishana (bio.php)     Kishana's Foundation (foundation.php)     Borderland (borderland.php)     Gallery (gallery.php)     Media (video.php)     Press (press.php)     Contact (contact.php)

# Kishana L. Holland (./)



Kishana Leslie Holland   has become a powerful voice for aspiring individuals. Her inspiration stemmed from her childhood in Brooklyn, NY where education played an integral role in her journey. Having studied Business Administration at Morgan State University and subsequently receiving a Bachelor's Degree she transitioned back to New York City as an Account Executive within a top-tier Wall Street Investment firm.

In the Spring of 2006, Kishana was afforded the opportunity to open Tres Chic Boutique & Accessories Lounge in her childhood community of Bedford Stuyvesant, Brooklyn. In the infancy stages of the Tres Chic brand, Kishana served as Founder & President of her local merchant's association and held the position of Delegate for the 36th District in Kings County.  Kishana garnered a Proclamation from Brooklyn Borough President Marty Markowitz along with being placed in The Congressional Record by Congressman Edolphus Towns for her tireless work in the Bedford Stuyvesant community.



(http://www.hollandgrouppr.agency/)

With an extensive knowledge of the marketing industry and a flair for details & communications, Kishana established Holland Group PR (http://www.hollandgrouppr.agency/)  (http://thehollandgroup.yolasite.com/)(HGPR). With a specialty in fashion & beauty, Holland Group PR creates and develops local, national and regional media campaigns, organizes events, publicizes new initiatives and builds audiences across a broad spectrum. (HGPR) maintains a vibrant communications network of print, design, electronic media, creative and public relations professionals. Holland Group PR delivers exceptional results for our clients in the retail, restaurant, entertainment, political and the not-for-profit sectors.

Kishana's proven ability to leverage relationships began with the creation of the Tres Chic brand. The aptly titled name has breathed life into two retail boutiques, a series of national shopping & social events, The Tres Chic Foundation (http://thetreschicfoundation.yolasite.com/) and the hugely successful Tres Chic Style (http://www.treschicstyle.blogspot.com/) Fashion Blog.



(http://www.treschicstyle.blogspot.com/)

In addition to being the founder and editor of Tres Chic Style, Kishana is executive producer/host of Tres Chic Style TV. Tres Chic Style TV (http://www.minglemediatv.com/TresChicStyleTV.html) is the latest endeavor of the Tres Chic Style brand. Tres Chic Style TV produces segments relating from fashion, beauty and lifestyle topics, including: celebrity guest, fashion/style experts and personalities to discuss their current projects and life.

Currently Kishana can be seen in a series of national Walmart  (http://www.youtube.com/watch?v=1Q46ZGWT05I)commercials and has been a featured guest on The Chew, Dr. Oz, NYC TV, Good Morning America, Good Day New York and Vegas Morning Blend to name a few. In 2014 Kishana spent 46 days on an international journey as a cast member in  a reality based docu-series, "Borderland" for network television.

Along with the roles of brand strategist and philanthropist, Kishana was a delegate in the 2014 Mrs. Nevada-America Pageant representing Enterprise, Nevada. In her short tenure in Las Vegas she has been featured in nearly a dozen publications with a feature in Vegas Magazine in 2014. Kishana's television and film credits include: The Mentalist, Law & Order, Law & Order SVU, Mystery Diners, Think Like A Man Too, Hangover 3, and Mall Cop 2. Kishana divides her time between Las Vegas & New York and has recently been bestowed the amazing honor of being named one of the 2016 Top 100 Women of Influence in Las Vegas by My Vegas Magazine (http://www.myvegasmag.com/blog/article/BOSVIEW/Top-100/) .

Tweet 

Make a Free Website (https://www.yola.com/) with Yola.