

Genova Burns LLC
494 Broad Street, Newark, NJ 07102
Tel: 973.533.0777 Fax: 973.533.1112
Web: www.genovaburns.com

Rajiv D. Parikh, Esq.
Partner
Member of NJ and NY Bars
rparikh@genovaburns.com
Direct: 973-535-4446

June 26, 2017

**VIA ECF FILING**
Honorable John Michael Vazquez, U.S.D.J.
United States District Court
District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

**Re: Democratic National Committee v. Republican National Committee, et al., Civil Action No.: 81-3876 (JMV)(JBC)**

Dear Judge Vazquez:

We write to provide the DNC's supplemental submission regarding the discovery disputes in the above-captioned matter. As set forth below, the RNC's arguments are meritless, and it should be ordered to fully respond to each of the narrowly tailored discovery requests served by the DNC.

Initially, the DNC notes that "the scope of post-judgment discovery is broad." *Singer v. Covista, Inc.*, 2013 WL 1314593, at *2 (D.N.J. Mar. 28, 2013) (internal quotations and citation omitted); *see also Dering v. Pitassi*, 1988 WL 115806, at *1 (E.D. Pa. Oct. 26, 1988) ("Courts have consistently held that the scope of post-judgment discovery is broad, enabling the post-judgment creditor to seek discovery not only of the debtor's current assets, but also of past financial transactions which could lead to the existence of fraudulently concealed or fraudulently conveyed assets."). *See generally* Fed. R. Civ. P. 26(b)(1) (setting forth one standard for the scope of discovery, without distinguishing between monetary or equitable claims); *Alliance to End Repression v. City of Chicago*, 1992 WL 80527, at *2 (N.D. Ill. Apr. 9, 1992) (applying the breadth of discovery under Rule 26 in consent-decree enforcement proceeding). For example, in *John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010), the court permitted full ESI discovery relating to a consent decree, observing that "the Defendants and MCCs are the only sources for this information. *To assert that they are in compliance and then refuse to permit full discovery to test that assertion is unfair.*" *Id.* at 888 (emphasis added); *see also United States v. City of Northlake*, 942 F.2d 1164, 1170 (7th Cir. 1991). This authority supports a broad reading of this Court's prior order on the scope of discovery and is contrary to the cramped reading of that order that the RNC is advancing.

In any event, the RNC's assertions in the Joint Letter about the scope of the DNC's requests for production are vague and unsupported. Indeed, although the RNC broadly asserts

GENOVA
BURNS
ATTORNEYS-AT-LAW

Hon. John Michael Vazquez, U.S.D.J.
Page 2 of 2

that the DNC's document requests are not tied to the prior allegations in this case and are part of a "fishing expedition," Joint Letter at 7-8, the RNC, in the Joint Letter, identifies only one request—the request relating to JTD Strategies—that it claims is unrelated to the DNC's initial application. As the DNC explained in the Joint Letter, the request related to JTD Strategies is directly tied to the allegations in this case about poll monitoring in Nevada, *id.* at 6-7;[1] and the other requests for production are likewise tied to issues that arose during the emergent injunction phase of the DNC's application to enforce the Consent Decree, *see id.* at 2-6.

The RNC's contention that it should not have to respond to requests for production that relate to matters—such as normal poll watching activities—that are not *per se* impermissible under the Consent Decree also fails.[2] As the DNC explained in the Joint Letter, the RNC's claim that it did not engage in *any* poll watching was a centerpiece of its defense, and poll watching that targets precincts with large minority populations would violate the Consent Decree's effects test. *Id.* at 2. Further, the Court's November 5, 2016 Opinion found that "the DNC presented credible evidence that the RNC [wa]s engaging in poll observations in Nevada," and "it appears that subterfuge was involved." Dkt. 138 at 32. Evidence that the RNC was engaged in additional poll watching when it previously claimed not to have engaged in *any*—particularly if such additional poll watching also involved subterfuge—would be directly relevant to the DNC's argument that the Court should infer that the RNC's poll watching violated the Consent Decree.

Thank you for Your Honor's consideration of these issues.

Respectfully submitted,

**GENOVA BURNS LLC**

/s/ *Rajiv D. Parikh*
Rajiv D. Parikh

Encl.
c: Counsel for Republican National Committee (via ECF)

---

[1] The DNC has attached the Supplemental Declaration of Ellyn Lindsay, Esq., as Exhibit A. That declaration further ties JTD Strategies to the poll watching that took place in Nevada prior to the 2016 general election. *See* Supp. Lindsay Decl. ¶¶ 5-6 (Holland sent check-in email to Joseph Dozier and she explained that he "was one of the consultants 'working with us'").

[2] The RNC's argument that assistance with voting machines is permissible under the Consent Decree, *see* Joint Letter at 8, is addressed in the Joint Letter at 4. Once again, the argument for inferring that there was a violation becomes increasingly forceful as the examples of subterfuge mount.

Genova Burns LLC
Newark, NJ • New York, NY • Camden, NJ • Red Bank, NJ • Philadelphia, PA • Jersey City, NJ • Washington, DC