# King & Spalding

King & Spalding LLP
1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-4707
Tel: +1 202 737 0500
Fax: +1 202 626 3737
www.kslaw.com

Bobby R. Burchfield
Direct Dial +1 202 626 5524
Direct Fax: +1 202 626 3737
bburchfield@kslaw.com

September 20, 2017

Honorable John Michael Vazquez
United States District Court for the District of New Jersey
U.S. Courthouse and Post Office Building
50 Walnut Street, Courtroom PO 03
Newark, New Jersey  07101

**Re:**   ***Democratic National Committee, et al. v. Republican National Committee, et al.,***
***Civil Action No.: 81-3876 (JMV) (JBC)***

Dear Judge Vazquez:

On behalf of the Republican National Committee, I write in opposition to the Democratic National Committee's September 13, 2017 letter requesting additional discovery (ECF No. 176).

In its letter brief to the Court, the DNC seeks depositions of seven witnesses.  They include two former RNC employees (one of whom is the RNC's former Chairman, Reince Priebus), a 30(b)(6) deposition of Stampede Consulting, LLC, and four non-party witnesses involved in election-related activities in Nevada during the 2016 election.  The DNC also seeks leave to propound five interrogatories about a single Trump campaign document that was included in the RNC's document production.

In support of this discovery request, the DNC relies only on documents showing — at most — the RNC's *awareness* of poll watching activities by the Pennsylvania Republican Party and other documents with no direct connection to RNC programs. It should not be missed that, after the RNC's massive document search, review, and production efforts, the DNC's only purported bases for further discovery are predicated on misinterpretations of five documents produced by the RNC.  It has come forward with no evidence that even suggests the RNC's involvement in prohibited ballot security activities. For this reason, the RNC urges the Court to deny any additional discovery.

**Tommy Knepper:**  The DNC seeks the deposition of the RNC's former Pennsylvania State Director Tommy Knepper based on three emails discussing, among other issues, "poll watching," on which he was copied.  As noted in the DNC's motion to show cause (ECF No. 95-1 at 13), it was widely reported that the Pennsylvania Republican Party was engaged in poll watching activity during the 2016 election.  Therefore, as the RNC's principal liaison to the Pennsylvania Republican Party, it is hardly surprising that Mr. Knepper appears on some emails among party representatives where discussions of poll watching took place.  In any event, this request should be denied for at least three reasons.

Honorable John Michael Vazquez, U.S.D.J.
United States District Court for the District of New Jersey
September 20, 2017
Page 2

First, there is nothing among these emails suggesting that Mr. Knepper or the RNC participated in or facilitated *ballot security* activities. To the contrary, and as shown in documents filed previously with the Court, Mr. Knepper regularly warned individuals that the RNC could *not* have any involvement in such activities. *See* Exhibits to Letter to Judge Vazquez, Aug. 21, 2017 (ECF No. 169-1) (Knepper: "EDO isn't poll watching, this would be watching polls to cut down on voter fraud. We cannot be involved in that." (RNC000000000090)), (Knepper: "Team-since you are all on the RNC payroll. [sic] You cannot participate in EDO activities." (RNC0000000091)), (Knepper: "I believe this is in relation to EDO and would need to be handled by Cody. I cannot be involved." (RNC0000009976)). Against these clear contemporaneous warnings by Mr. Knepper to RNC personnel not to be involved in anti-fraud activities, and in light of prior declarations affirming that the RNC was not involved in those efforts, the DNC's attempt to construe the documents attached to its letter as indicating involvement by Mr. Knepper in whatever anti-fraud efforts the Pennsylvania Republican Party may have undertaken is not a fair or reasonable construction. A deposition of Mr. Knepper is neither justified nor likely to produce contrary evidence.

Second, although the DNC claims the RNC was "involved in coordinating poll watching efforts in Pennsylvania," the RNC's questions in the emails address how *voter turnout* should be monitored on election day; this is a routine component of permissible get-out-the-vote (GOTV) programs. *See* DNC Ltr. Br. Ex. 3 (ECF No. 176-3) (Knepper: "Can you circle with Allie and figure the best way *to report poll turnout* on election day?") (emphasis added). *See also* Consent Decree ¶ 3 ("'Normal poll-watch function' shall include stationing individuals at polling stations to observe the voting process"), ¶ 5 (Consent Decree shall not apply to programs "to increase the number of individuals that cast a ballot in any election" such as GOTV activities).[1]

Third, the DNC's desire to "test the credibility" of statements about poll watching by RNC Chief Counsel John Phillippe and Pennsylvania Republican Party Chair Rob Gleason deserves no consideration. As each individual stated in his Declaration, the RNC was not involved in the Pennsylvania Republican Party's poll monitoring program. But even if the RNC had indeed participated in permissible poll watching activities in the state, the DNC cannot prove its allegations that the RNC *violated* the *Consent Decree* by creating a dispute on the collateral issue of legitimate poll watching activities. *See Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In short, the discovery requested by the DNC would address a purely collateral issue with no bearing on whether the RNC violated the Decree.

---

[1] The DNC refers to an October 2016 email exchange between Ryan Stevens, a Pennsylvania Republican Party representative, and Lance Stange, who is not an RNC employee. *See* DNC Ltr. Br. 1-2. In the exhange, Mr. Stevens explains that the state party identified four voting precincts at which it planned to place poll watchers because the precincts would provide a good indication of overall voter turnout. *See* Ltr Br. Ex. 3 (RNC0000009972). In response to Mr. Stevens's question about whether there are additional polls "that might be a good indicator of turnout on E-Day," Mr. Stange stated that four precincts are "not enough for a proper guarantee of integrity." *Id.* In context, Mr. Stange's remark concerns the reliability (*i.e.*, "integrity") of estimates of voter turnout based on the sample of those four voting precincts. The remark has nothing to do with ballot security.

Honorable John Michael Vazquez, U.S.D.J.
United States District Court for the District of New Jersey
September 20, 2017
Page 3

**Stampede and the Nevada Poll Watchers:**  The DNC has identified no additional evidence warranting *even more* discovery on election related activities in Nevada.

To support their motion to show cause, the DNC relied on several Declarations with observations about alleged poll monitors Onita Peterson, Charlene Stamps, Victor Santiago, and Kishanna Holland (who was a paid employee of the Nevada State Democratic Party).[2]  *See* Exhibits to Letter to Judge Vazquez, Aug. 21, 2017 (ECF No. 169-2).  In denying the DNC's motion, the Court held that the DNC's evidence showed only a "possibility, not a probability" of voter fraud activities by the RNC in Nevada.  *See* Order, Nov. 4, 2016, at 34-35 (ECF No. 138).

On January 4, 2017, in light of narrowed discovery during the preliminary injunction phase of the show cause proceeding, the Court granted the DNC additional document discovery regarding the Nevada poll watching allegations.  *See* Order, January 4, 2017 (ECF No. 147) and Order, July 7, 2017 (ECF No. 167).  The RNC produced responsive, non-privileged documents in response to those DNC document requests.  *See* DNC Requests for Production Nos. 8, 9, 13, 14, & 20 (ECF No. 162-1).  After the RNC's massive document production effort, the DNC can point to nothing to contradict the RNC's submissions from last fall.

In its latest request for expanded discovery, the DNC relies only on a draft of a Stampede contract assignment from the Trump campaign to the RNC.[3]  *See* DNC Ltr. Br. 2-3 & Ex. 4 (RNC0000010763).  Even though the RNC produced all of its contracts with Stampede to the DNC, none of those contracts involved *any* work for the RNC in Nevada.  Never satisfied, the DNC argues the unexecuted contract assignment entitles it to non-party depositions of Stampede's corporate designee and the four alleged poll watchers.  But it is unclear how a draft contract assignment, which does not contain any suggestion of poll watching activities or ballot security activities, increases the likelihood that the RNC engaged in poll watching, much less prohibited ballot security activities.  Accordingly, the RNC urges the Court to deny the DNC's request for further discovery into activities in Nevada.

**Reince Priebus:**  In requesting to depose former RNC Chairman Reince Priebus, the DNC identifies *no new evidence* that he advised the Trump campaign or that the RNC coordinated ballot security activities with his campaign.  Instead, the DNC points only to the same transcript from Mr. Priebus's October 23, 2016 appearance on *Face the Nation*, that it unsuccessfully relied on last fall.  In that transcript, Mr. Priebus stated he was aware that then-candidate Donald Trump would consider *a recount* in the event he lost the presidential election.  *See* DNC Motion for Order to Show Cause (ECF No. 96-24) (Priebus:

---

[2] As noted previously by the RNC (ECF No. 169), Ms. Holland's name has appeared in different forms in documents and publically available campaign finance disclosures by the Nevada State Democratic Party and Nevada Republican Central Committee.  *See id.* at 1 (identifying Ms. Holland as "Kishana Holland," "Leslie Holland," and "Kieshana Holland").

[3] The DNC also attaches to its letter brief a copy of a draft contract between the September Group and the RNC for work in Nevada.  This contract was an attachment to the email that included the draft contract assignment for the Stampede-Trump Contract.  *See* Ltr Br. Ex. 4 (RNC0000010762).  The September Group contract involves only voter canvassing (*i.e.*, GOTV) and has no relevance to ballot security or even poll monitoring.  *See id.* (Draft Contract Art. 3.01) (RNC0000010766-67).

Honorable John Michael Vazquez, U.S.D.J.
United States District Court for the District of New Jersey
September 20, 2017
Page 4

"What he's saying is, he wants to reserve all options, and if there is [sic] *grounds for recount*, I will exercise my options.  I know where his head is at.  He is not willing to not concede *if he loses* and there's no fraud.") (emphases added).  Mr. Priebus's response to a speculative question about a *post-election recount* has no bearing on the anti-voter suppression prohibitions in the Consent Decree.

As the Court explained in its November 4, 2016 Opinion, however, this statement and others by Mr. Priebus regarding the RNC's activities with the Trump campaign were "insufficient to show such coordination" to prevent vote fraud.  *See* Opinion 26 (ECF No. 138).  Nevertheless, the DNC still argues it needs to depose Mr. Priebus "in order to determine what Priebus and Trump discussed — and in particular whether Priebus advised Trump on ballot security efforts." DNC Ltr. Br. 4.  But the DNC identifies no new evidence to support the request, and the Court has already stated that "the discovery thus far produced by the RNC reflects that *it is not working with the Trump Campaign on ballot security measures*." *See* Opinion 27 (ECF No. 138) (emphasis added).  Because the DNC has identified no new basis for their coordination claim beyond what the Court has already rejected, a deposition of Mr. Priebus would serve only as a fishing expedition by the DNC.  *See Atkinson v. Middlesex Cty.*, No. CIV.A 09-4863FLW, 2010 WL 398500, at *3 (D.N.J. Jan. 28, 2010) ("[T]he Third Circuit Court of Appeals has held, 'discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action.'") (quoting *Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania*, 103 F.3d 294, 299 (3d Cir. 1996)).

**Recount Memorandum:**  The DNC seeks to propound five interrogatories[4] related to the "Recount Memorandum."  *See* DNC Ltr. Br. 4, Ex. 5 (RNC0000010727-_00009).  The DNC contends the Interrogatories are necessary because "from the face of [the Recount Memorandum], it is not clear who prepared the document, why the RNC was in possession of it, what the purpose of the document is, or whether the template was used by the RNC or any state party to prepare election-related plans that involved poll monitoring."  *Id*.  The DNC ignores that answers to many of these questions are included in the accompanying *cover email* from Trump campaign counsel, Stuart McCommas.  *See* Email Chain (RNC0000010724-25) attached as Exhibit A.  The email was produced *with* the Recount Memorandum, but the DNC did not include the cover email with its letter brief.

In his email to the Trump campaign's Maine State Director Christie-Lee McNally (who was also an independent contractor for the RNC), Mr. McCommas explained that the Trump campaign created the document in preparation for election day in battleground states.  *See id*.  He asked Ms. McNally to help him identify counsel in relevant states who could help him fill out the templates before election day.  *See id*.  Shortly after receiving the request, Ms. McNally forwarded the request to RNC counsel to ask whether she was restricted from assisting with the request.  *See id*.  As RNC Chief Counsel John Phillippe explained in his Declaration dated October 31, 2016 (ECF No. 111-1, ¶¶ 20, 22, & 24), RNC

---

[4] The Court's Order for this discovery briefing explicitly permits briefing on the DNC's request for depositions, not interrogatories.  *See* ECF 175 ("[T]he DNC shall submit its filing regarding its request *for depositions* on or before September 13, 2017.") (emphasis added).  We note that the DNC did not include its proposed interrogatories with its letter.

Honorable John Michael Vazquez, U.S.D.J.
United States District Court for the District of New Jersey
September 20, 2017
Page 5

independent contractors received training about the Consent Decree and were required to comply with it — even when acting outside the scope of their duties for the RNC, such as pursuant to an employment or contractual relationship with the Trump campaign. Therefore, far from raising questions as to whether the RNC violated the Consent Decree, the email with the recount memorandum attached shows instead that the RNC's compliance procedures worked.

In sum, the DNC has provided no sufficient basis for expanding discovery beyond the significant discovery already allowed by the Court.  Accordingly, the RNC urges the Court to reject the DNC's request for further discovery.

Respectfully submitted,


/s/ Bobby R. Burchfield
Bobby R. Burchfield

cc:      DNC Counsel (by ECF)